No. 25-2886

Civil

---

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE EIGHTH CIRCUIT**

**CANARY REED,**

**APPELLANT,**

**v.**

**THE KINETIC GROUP, ET AL**

**APPELLEES.**

***Appeal from the***

***United States District Court for the***

***Eastern District of Arkansas, Central Division***

BRIEF OF APPELLANT

JODY L. SHACKELFORD
(AR Bar No. 2024042)
Attorney for Appellant

Iron Rock Law Firm
131 W. Church St.,
Salem, AR 72576
(870) 399-1440
jody@goironrock.com

## SUMMARY OF THE CASE

This is an employment-discrimination appeal from summary judgment. Viewing the record in Appellant's favor, as Rule 56 requires, a reasonable jury could find that she, the only Black employee in Rotary Cam, repeatedly reported sabotage and harassment by white male coworkers, yet was disbelieved, dismissed, and disciplined while similarly situated white coworkers were not. Supervisor admits he “took everybody’s word” but hers, believed the “majority,” and rejected Reed’s account while accepting the account of the all-white group harassing her.

The district court erred by drawing inferences against the non-movant, and ignoring disputed facts. The summary-judgment record contains unusually direct comparator evidence from Reed’s same-position, same-shift coworker (Reichel), who admitted repeated sleeping without formal discipline while Reed received a formal write-up for an alleged single incident. Supervisor (Yekel) said Reichel, a white male, had 50/50 responsibility for mistakes, yet none of the punishment, while plaintiff was fired. The company falsified a report of misconduct to use as a pre-text for termination. The circumstantial record provides a reasonable inference of race discrimination, retaliation, and a hostile work environment under Title VII and the ACRA. Facts are in genuine dispute. Judgment should be reversed and the case remanded for trial. Appellant respectfully requests 15-mins for oral argument.

## CORPORATE DISCLOSURE STATEMENT

Plaintiff, Canary Reed, is an individual residing in the State of Arkansas.

## TABLE OF CONTENTS

**SUMMARY OF THE CASE** .................................................................. i

**CORPORATE DISCLOSURE STATEMENT** ............................................ ii

**TABLE OF AUTHORITIES** .................................................................. vi

**JURISDICTIONAL STATEMENT** ........................................................ 1

**STATEMENT OF THE ISSUES** ............................................................ 2

**STATEMENT OF THE CASE** ................................................................ 4

I. Background ............................................................................... 4

A. Reed's position and work setting ............................................... 4

B. Repeated shutoffs, sabotage and undermining complaints ......... 4

C. Management disbelieved Reed, failed to investigate per policy ... 5

D. Comparator evidence showing disparate discipline .................... 6

E. Termination ............................................................................. 8

II. Procedural History ..................................................................... 9

A. The Parties' Positions ................................................................ 9

B. The District Court's Order .......................................................... 9

**SUMMARY OF THE ARGUMENT** ........................................................ 10



Appellate Case: 25-2886 Page: 4 Date Filed: 01/05/2026 Entry ID: 5593553

**ARGUMENT** .......................................................................................... 13

I. Standard of Review ........................................................................... 13

II. Applicable Law ................................................................................. 13

A. Discrimination (Title VII and ACRA) ................................... 13

B. Retaliation ............................................................................... 14

C. Hostile Work Environment ................................................................ 14

III. The district court erred in granting summary judgment on Reed's race/sex discrimination claims because Reed produced triable evidence of pretext, comparator disparate discipline, and credibility disputes, and there are material facts in genuine dispute. .................................................... 15

A. The district court resolved disputed facts and credibility against Reed. 15

B. Defendants' own internal record flips the "Travis interruption" incident and supports a jury finding of pretext and retaliatory motive. ................ 16

C. Reed produced strong "similarly situated comparator" evidence under Eighth Circuit standards. ................................................................. 19

1. Sleeping disparity comparator.................................... 19

2. Ring-mixing and selective responsibility. ................ 20

D. Reed produced additional pretext evidence: policy deviations and biased complaint-handling. ........................................................................ 21



Appellate Case: 25-2886 Page: 5 Date Filed: 01/05/2026 Entry ID: 5593553

E. The district court's "no racial remarks heard by Reed" framing improperly discounts circumstantial evidence. .................................................. 22

IV. The district court erred in granting summary judgment on retaliation because Reed engaged in protected opposition and a jury could find but-for causation and pretext. ........................................................................ 23

A. Reed engaged in protected activity. ................................................ 23

B. A jury could find but-for causation based on escalating discipline and disputed write-ups. ........................................................................... 24

V. The district court erred in granting summary judgment on hostile work environment because the record supports race-based harassment under the totality of circumstances and failure to remedy. .................................... 25

A. The court improperly treated repeated sabotage/undermining as "isolated incidents." ........................................................................................ 25

B. The record supports "based on race" and employer failure to remediate. .. 26

**CONCLUSION** ........................................................................................ 29

**CERTIFICATE OF SERVICE** ............................................................... 31

**CERTIFICATE OF COMPLIANCE** ........................................................ 31

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)* ................................. *2, 13, 16, 19, 25*

*Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003)* ........................................ *28*

*Fercello v. County of Ramsey, 612 F.3d 1069 (8th Cir. 2010)* .................... *3*

*Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993)* ........................................ *3, 15, 22*

*Lake v. Yellow Transp., Inc., 596 F.3d 871 (8th Cir. 2010)* .......................... *19*

*McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)* ............................ *14*

*Peterson v. Scott County, 406 F.3d 515 (8th Cir. 2005)* ................................ *3*

*Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000)* ............. *14, 19, 22, 28*

*Ridout v. JBS USA, LLC, 716 F.3d 1079 (8th Cir. 2013)* ............................. *2*

*Ross v. Douglas County, 234 F.3d 391 (8th Cir. 2000)* ................................ *3, 14*

*Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011) (en banc)* .... *2, 19*

*Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013)* ...................... *14*

*Watson v. CEVA Logistics U.S., Inc., 619 F.3d 936 (8th Cir. 2010)* ............. *29*

*Young v. Builders Steel Co., 754 F.3d 573 (8th Cir. 2014)* .......................... *2, 14, 19*

Statutes

28 U.S.C. § 1291 ........................................................................... 1

28 U.S.C. § 1331 ........................................................................... 1

28 U.S.C. § 1367 ........................................................................... 1

Rules

Fed. R. App. P. 32 ........................................................................... 31

Fed. R. App. P. 32(f) ........................................................................ 31

Fed. R. Civ. P. 56 .................................................................. 13, 16, 18, 27, 29

## JURISDICTIONAL STATEMENT

This appeal is taken from a final order granting summary judgment in favor of Defendants on Plaintiff Canary Reed's Title VII and Arkansas Civil Rights Act claims and directing the Clerk to close the case. The district court entered its final Order granting summary judgment on September 11, 2025. (App. Page 200, Add. 3, R. Doc. 40). Final Judgment was entered the same day. (App. 213, Add. 16, R. Doc. 41).

The United States District Court for the Eastern District of Arkansas had subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the Arkansas Civil Rights Act claims pursuant to 28 U.S.C. § 1367.

Plaintiff timely filed a Notice of Appeal on September 23, 2025, within thirty days of entry of the September 11, 2025, final Order and Judgment. (Notice of Appeal, App. Page 215, R. Doc. 42). This Court therefore has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

**1. Discrimination (Title VII/ACRA).** Did the district court err in granting summary judgment where Reed produced evidence that: (a) a similarly situated white male comparator (Reichel) engaged in comparable or worse conduct (including repeated sleeping) without comparable discipline; (b) Defendants' stated performance reasons are contradicted by witness testimony; and (c) the supervisor disbelieved Reed, believed the "majority," and Defendants deviated from required harassment-investigation policy, creating triable issues of pretext and discriminatory motive?

Most apposite authorities:

*Ridout v. JBS USA, LLC*, 716 F.3d 1079 (8th Cir. 2013) (reversing summary judgment where comparator evidence showed differing discipline for similar misconduct);

*Young v. Builders Steel Co.*, 754 F.3d 573 (8th Cir. 2014) (policy deviations and disparate treatment may show pretext);

*Torgerson v. City of Rochester,* 643 F.3d 1031 (8th Cir. 2011) (en banc) (summary judgment improper where evidence requires credibility determinations); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).



Appellate Case: 25-2886 Page: 10 Date Filed: 01/05/2026 Entry ID: 5593553

**2. Retaliation (Title VII/ACRA).** Did the district court err in granting summary judgment where Reed complained of racially motivated harassment/sabotage (protected opposition), and the record permits a finding that subsequent escalating discipline and termination would not have occurred but for that protected activity?

Most apposite authorities:

*Peterson v. Scott County*, 406 F.3d 515 (8th Cir. 2005) (temporal proximity alone insufficient but combined with other evidence may support causation);

*Fercello v. County of Ramsey*, 612 F.3d 1069 (8th Cir. 2010) (causal connection proven by pattern of antagonism and pretext).

**3. Hostile Work Environment (Title VII/ACRA).** Did the district court err in granting summary judgment where the record, viewed in Reed's favor, supports repeated sabotage/undermining of the only Black employee in the unit in a racially charged workplace, and employer failure to investigate or remedy as required?

Most apposite authorities:

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993) (totality of circumstances, frequency, severity, and effect on work); *Ross v. Douglas County*, 234 F.3d 391 (8th Cir. 2000) (failure to act on complaints supports liability).

## STATEMENT OF THE CASE

### I. Background

**A. Reed's position and work setting**

Reed, an African-American woman, worked as a Body Form Technician in the Rotary Cam department, operating heavy machinery used to manufacture shotgun shells. (Reed Dep. 20:2; App. 164, R. Doc. 30, at 187). Her supervisor, Conrad Yekel, testified that Reed was the only Black employee in the Rotary Cam unit during the relevant period. (Yekel Dep. 42:23–25; App. 164, R. Doc. 30, at 104). This racial isolation is undisputed. (Yekel Dep. 42:23–25; App. 164, R. Doc. 30, at 104). Reed's coworker, Nathan Reichel, testified that to his knowledge all supervisors in Rotary Cam were white men. (Reichel Dep. 38:7–8; App. 167, R. Doc. 30, at 38).

**B. Repeated machine shutoffs and sabotage/undermining complaints**

Reed testified that when she arrived for her shift, machines were repeatedly shut off by day-shift employees, requiring restart time and undermining production. (Reed Dep. 49:5–25; App. 169, R. Doc. 30, at 216). She testified this occurred repeatedly while she worked nights. (Reed Dep. 50:19–21; App. 169, R. Doc. 30, at 217).

Reed's coworker Nathan Reichel, a white male Body Form Technician working the same night shift with identical production requirements, corroborated key aspects of her account. Reichel testified that machines were supposed to remain running through shift change. (Reichel Dep. 9:11–13; App. 120, R. Doc. 30, at 21).

He further testified that a group of white male day-shift employees routinely shut machines down before Reed's shift began. (Reichel Dep. 10:14–18; App. 121, R. Doc. 30, at 22). Reichel testified Reed complained to him that the machines were being shut off when she came in and that she felt targeted by this conduct. (Reichel Dep. 13:9–14:13; App. 124, R. Doc. 30, at 25–26).

Reed also complained that a handmade "slug guide" she created to assist production was intentionally thrown away and characterized the incident as racially motivated harassment. (Reed Dep. 59:1–12; R. App. 174, R. Doc. 30, at 226).

"Q: You used the term racist?

A: Yes." *Id*.

Yekel acknowledged Reed raised this complaint with him. (Yekel Dep. 26:5–22; App. 149, R. Doc. 30, at 88).

**C. Management disbelieved Reed and failed to investigate per policy**

Yekel testified that when Reed complained of harassment and undermining, he "took everybody's word" and credited the "majority." (Yekel Dep. 27:15–22; App. 150, R. Doc. 30, at 89). He further testified he did not believe Reed's harassment complaints. (Yekel Dep. 27:18–20:3; App. 150, R. Doc. 30, at 89). Rather than weighing both sides equally, Yekel testified he accepted the account of the white male employees accused of misconduct and rejected Reed's account. (Yekel Dep. 27:21–22; App. 150, R. Doc. 30, at 89).

"Q:You took everybody's word but hers?

A: Yes." *Id*.

Clayton Schmidt testified that company policy required supervisors to stop harassment, separate employees, obtain statements, and escalate complaints to HR, which "handles the investigation." (Schmidt Dep. 11:16–25; App. 157, 12:18–21; App. 158, R. Doc. 30, at 137–138).

Schmidt further testified that Reed's harassment complaint was not reported to him in accordance with policy. (Schmidt Dep. 33:1–17; App. 162, R. Doc. 30, at 159).

Schmidt agreed that race-based complaints should be escalated immediately to HR and that this did not occur here. (Schmidt Dep. 33:21–25; App. 162, 34:1-5; App. 163, R. Doc. 30, at 159-160).

**D. Comparator evidence showing disparate discipline (Reichel and others)**

Reed produced unusually strong comparator evidence through Reichel. Reichel admitted that photographs showed him asleep on the job and testified he had "fell asleep more times than that." (Reichel Dep. 22:10–12; App. 133, R. Doc. 30, at 34). He testified he never received a formal written reprimand for sleeping. (Reichel Dep. 22:13–16; App. 133, R. Doc. 30, at 34).

By contrast, Reed received a formal written reprimand for an alleged single incident. (Reed Dep. 28:3–7; App. 151, R. Doc. 30, at 90).

Reichel testified that at the time of Reed's write-up, he told supervisors he did not believe Reed was sleeping and that Remington had evidence contradicting the allegation. (Reichel Dep. 48:7–15; App. 140a, R. Doc. 30, at 60).

Reed explained she was using medicated eye drops. (Reichel Dep. 48:17–18; App. 140a, R. Doc. 30, at 60). Yekel testified Reed had already been "found guilty" before he spoke with her. (Yekel Dep. 20:3–20; App. 147, R. Doc. 30, at 83). Even with a witness on her behalf. This just adds to the weight of the totality of the circumstances here. She was making complaints about racially motivated discrimination, and a reasonable jury could find the company was working to build a false pretext for termination. (Reed Dep. 58:3–6; App. 173, R. Doc. 30, at 225).

Reichel further contradicted performance accusations made against Reed. He testified that when supervisor Pence texted that "the machines weren't running all night," that statement was false, and that he and Reed had five machines running until approximately 12:30 a.m.; he testified that the company was lying about Reed. (Reichel Dep. 19:7–25; App. 130, R. Doc. 30, at 31).

Shockingly, Yekel testified that while Reed and Reichel worked together, responsibility was 50/50, yet Reed was the only one receiving write-ups. (Yekel Dep. 51:1–25; App. 155, R. Doc. 30, at 113).

He further testified that if Reichel, the white man, did not accept blame, responsibility became 100% Reed. (Yekel Dep. 47:9–19; App. 154, R. Doc. 30, at 109).

Yekel also testified Reichel received no discipline for the ring-mixing incident. (Yekel Dep. 47:10–16; App. 154, R. Doc. 30, at 109). Reichel testified Remington treated Reed differently than it treated him. (Reichel Dep. 48:1–3; App. 140a, R. Doc. 30, at 60). This is the exact type of fact that would preclude summary judgment.

**E. Termination**

Reed was terminated by phone on October 20, 2023. (Reed Dep. 88:19-25; App. 177, R. Doc. 30, at 255). Reichel testified that terminations were normally conducted in person and that Reed's phone termination "shocked" him. (Reichel Dep. 17:1-3; App. 128, R. Doc. 30, at 29). Schmidt's testimony and the investigation materials reflect that Reed was called at home and informed of her termination, rather than terminated in person. (Reed Dep. 88:19-25; App. 177, R. Doc. 30, at 255).

## II. Procedural History

### A. The Parties' Positions

Reed filed suit alleging race and sex discrimination, hostile work environment, and retaliation under Title VII, along with parallel claims under the Arkansas Civil Rights Act. (Am. Compl., App. 1, R. Doc. 2). Defendants moved for summary judgment, arguing Reed could not establish a prima facie case and, alternatively, that Defendants terminated Reed for alleged "policy violations and aggression toward a supervisor," and that Reed lacked evidence of pretext. (Defs.' Mot. for Summ. J., App. 11, R. Doc. 12; Defs.' Br. in Supp., App. 13, R. Doc. 13).

Reed opposed summary judgment and filed a Statement of Additional Material Facts supported by deposition testimony and documentary exhibits,



Appellate Case: 25-2886 Page: 17 Date Filed: 01/05/2026 Entry ID: 5593553

including Defendants' harassment and investigation policy and an incident/investigation report produced by Defendants. (Pl.'s Resp. in Opp. to Defs.' Mot. for Summ. J., App. 58, R. Doc. 15; R. Doc. 16; Pl.'s Statement of Facts, App. 82, R. Doc. 29; Pl.'s Ex. Supp., App. 100, R. Doc. 30).

**B. The District Court's Order**

The district court granted Defendants' motion for summary judgment and directed the Clerk to close the case. (Order, App. 200, Add. 3, R. Doc. 40 at 1, 13).

On discrimination, the court held Reed failed to show circumstances giving rise to an inference of discrimination and further held she failed to raise a triable issue of pretext, relying in part on an "honest belief" framing and concluding the record did not support an inference that unlawful race or sex bias motivated termination. (Order, App. 205, Add. 8, R. Doc. 40 at 6–10).

On hostile work environment, the court held the alleged conduct was not sufficiently hostile or abusive to be actionable and that Reed lacked evidence, beyond speculation, that the complained-of treatment was because of race or sex. (Order, App. 209, Add. 12, R. Doc. 40 at 10–11).

On retaliation, the court held Reed failed to establish protected activity/causation and emphasized temporal gaps (including a six-month gap) as

insufficient under the facts, while also concluding Reed did not show pretext beyond temporal proximity. (Order, App. 210, Add. 210, R. Doc. 40 at 11–12).

## SUMMARY OF THE ARGUMENT

The judgment should be reversed. Under de novo review, the record must be viewed in Reed's favor, and the court may not weigh credibility.

First, Reed produced substantial pretext evidence for discrimination. A similarly situated white male comparator, Nathan Reichel, admitted he "fell asleep more times than that" but testified he never received a formal write-up, while Reed was disciplined for a single incident. (Reichel Dep. 22:10–12; App. 133, R. Doc. 30, at 34). Reed also contradicted performance allegations, testifying that she and Reichel "always had the best production" and "outran the other shifts". (Reed Dep. 153; App. 178, R. Doc. 30, at 320).

Supervisor Conrad Yekel admitted a biased evaluation process, stating he "believed the people, the majority" and did not believe Reed was being harassed, despite Reed being the lone Black employee in the department. (Yekel Dep. 27:15–22; App. 150, R. Doc. 30, at 89).

In response to a question about Reed reporting the harassment, Yekle said:

"So if she's bothering them so much that they have got to harass her…"



Appellate Case: 25-2886 Page: 19 Date Filed: 01/05/2026 Entry ID: 5593553

(Yekel Dep. 55; R. Doc. 30, at 117). This is blaming the victim in a way that a reasonable jury could find as evidence of disparate treatment and discrimination.

This is a pattern of stacking everything against Reed, the only black girl in rotary cam. One of the most stark revelations from the deposition was that the company made a false report about her behavior, testifying that a co-worker interrupted Reed and Yekel, yet the company HR report falsely holds Reed instigated the interruption. (HR excerpt, and Yekel Depo excerpt, App. 86, R. Doc. 29 at 5).

Reed also produced evidence that Defendants deviated from their "zero tolerance" policy, which requires that supervisors must report the conduct or complaint to the Human Resources Department so that an investigation can be made. (Schmidt Dep. 12:16-21; App. 158, R. Doc. 30, at 138). Yet, Reichel was never questioned about Reed's reports of machine shutoffs. (Reichel Dep. 13:15-24, App. 124, R. Doc. 30, at 25). This is sufficient for a jury to find discrimination and pretext under Title VII and the ACRA.

Second, Reed's retaliation claim is triable. Reed opposed what she reasonably believed was racially motivated harassment, explicitly reporting that the disposal of her handmade tool felt like a "racial move". (Reed Dep. 58:3–6; R. App. 173, R. Doc. 30, at 225). She testified that machine shutoffs, which

supervisor Yekel asked her to accommodate rather than disciplining those responsible, occurred "about 20 times". (Reed Dep. 50:16-21; App. 169, R. Doc. 30, at 217). A jury could find that the subsequent discipline and termination would not have occurred but for her protected opposition, as the "honest belief" narrative is undermined by comparator evidence.

Third, the hostile work environment claim is also triable under the totality of circumstances. Reed offered evidence of repeated sabotage, including approximately 20 machine shutoffs and the destruction of her work tools. (Reed Dep. 57:6-12; App. 172, R. Doc. 30, at 224). Management failed to follow their own policy requiring HR-led investigations into these reports. (Schmidt Dep. 33, 21-25, App. 162, R. Doc. 30, at 159). The district court's contrary conclusions required fact-weighing and inference-drawing against Reed. All material genuine facts in dispute that preclude summary judgment.

## ARGUMENT

### I. Standard of Review

This Court reviews summary judgment de novo, viewing the evidence and drawing all reasonable inferences in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Credibility determinations, weighing

evidence, and choosing between competing inferences are for the jury, not the court at Rule 56. Id.

## II. Applicable Law

### A. Discrimination (Title VII and ACRA)

Absent direct evidence, discrimination claims are analyzed under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). At the pretext stage, a plaintiff may show pretext through, among other means, disparate treatment of similarly situated employees, failure to follow policies, or evidence the stated reasons are unworthy of credence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–48 (2000); *Young v. Builders Steel Co.*, 754 F.3d 573, 578 (8th Cir. 2014). ACRA claims are analyzed under the same framework as Title VII. (Order, App. 205, Add. 8, R. Doc. 40 at pg. at 6 (citing *Merritt*)).

### B. Retaliation

Retaliation requires protected activity, a materially adverse action, and but-for causation. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). The "but-for" standard does not require direct evidence; causation may be proven circumstantially through timing, a pattern of escalating discipline, and evidence of pretext.



Appellate Case: 25-2886 Page: 22 Date Filed: 01/05/2026 Entry ID: 5593553

### C. Hostile Work Environment

To establish a hostile work environment, a plaintiff must show unwelcome harassment based on a protected trait that is sufficiently severe or pervasive to alter a term or condition of employment, and employer knowledge with failure to take proper remedial action. *Ross v. Douglas Cnty.*, 234 F.3d 391, 395–96 (8th Cir. 2000). Severity/pervasiveness is assessed under the "totality of the circumstances." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

## III. The district court erred in granting summary judgment on Reed's race/sex discrimination claims because Reed produced triable evidence of pretext, comparator disparate discipline, and credibility disputes, and there are material facts in genuine dispute.

### A. The district court resolved disputed facts and credibility against Reed.

Defendants' explanation depended on alleged performance failures and misconduct. But Reed's record includes direct contradictions from her partner Reichel, who worked alongside her, and impeachment-type admissions by management. For example, Reichel testified that the supervisor's claim "the machines weren't running all night" was false, calling it "a lie," and confirmed that he and Reed had five machines running until approximately 12:30 a.m. (Reichel

Dep. 19:7–25; App. 130, R. Doc. 30, at 31). A jury could conclude that the stated performance basis was false or exaggerated.

Similarly, the "sleeping" write-up is heavily disputed. Reichel testified Defendants had evidence the allegation was untrue and that he told supervisors contemporaneously he did not believe Reed was sleeping. (Reichel Dep. 48:7–15; App. 140a, R. Doc. 30, at 60). Reed explained she was using medicated eye drops. (Reichel Dep. 48:17–18; App. 140a, R. Doc. 30, at 60). Yekel admitted Reed was "found guilty" before he spoke with her. (Yekel Dep. 20:3–20; App. 147, R. Doc. 30, at 83). A jury could find this was not an "honest belief" discipline process.

The district court's affirmance of Defendants' narrative necessarily chose which witnesses to believe and which inferences to draw, impermissible at Rule 56. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**B. Defendants' own internal record flips the "Travis interruption" incident and supports a jury finding of pretext and retaliatory motive.**

Defendants relied on a storyline that Reed was "aggressive" and insubordinate, and they memorialized that storyline in their HR file, in contradiction of Yekel's testimony. (HR excerpt, and Yekel Depo excerpt, App. 86, R. Doc. 29 at 5).

In Exhibit B (Remington_000070), the company's narrative states that HR (Beth) received a text from Area Manager Clayton Schmidt reporting that "team lead" Travis was "trying to explain what the machine output should be," when "Canary interrupted and yelled at Travis," told him "not to interrupt her," and said she was "only taking directions from the supervisor." (HR excerpt, and Yekel Depo excerpt, App. 86, R. Doc. 29 at 5). That contemporaneous record casts Reed as the instigator, interrupting Travis, "yelling," and refusing input from a white team lead, exactly the kind of characterization Defendants later advanced to justify discipline and termination.

But Yekel's sworn testimony shows a materially different reality. Yekel testified that Reed was having a conversation with him and that Travis "jump[ed] into the conversation." (Yekel Dep. 14:12-17; App. 144, R. Doc. 30, at 76).

"Q: so, you were having a conversation with Canary?

A: Yes, correct." (Yekel Dep. 14:3-6; App. 144, R. Doc. 30, at 76).

Yekel further acknowledged he was talking with her, not Travis. *Id*. Critically, Yekel also admitted Travis went so far as to offer an apology at the time for jumping in, "I'm not trying to be rude," he said, confirming that Travis recognized he had inserted himself into a conversation Reed was having with

Yekel. (Yekel Dep. 15:16-24; App. 145, R. Doc. 30, at 77).

"Q: So Travis apologized, correct?

A: To some extent." *Id.*

This fact is important because of how the event was falsely reported by the company and used as grounds for termination. (Ex B., HR Report, App. 106, R. Doc. 30, at 7 (Remington_000070)).

A reasonable jury could conclude the company's HR narrative (Reed "interrupted and yelled at Travis") is not a neutral account but a loaded reframing that turns Travis's interjection into Reed's misconduct. The white male bond was reinforced on the record, where Yekel calls Travis his wingman. "he [Travis] is pretty much my wingman," he said. Emphasis added. (Yekel Dep. 15:8-16; App. 145, R. Doc 30 at 77.)

Reed had already engaged in protected opposition to race discrimination and male harassment, and Defendants then recast the Travis exchange in the HR file to depict Reed as the aggressor and insubordinate, evidence a jury may view as retaliatory pretext. (Ex B., HR Report, App. 106, R. Doc. 30, at 7.)

That contradiction matters at Rule 56. It is classic pretext evidence when an employer's "paper trail" materially mischaracterizes the incident that purportedly

shows the employee's attitude or insubordination, especially where the decisionmakers already admitted they defaulted to crediting the "majority" and disbelieving Reed. (Yekel Dep. 27:15–22; App. 150, R. Doc. 30, at 89).

Under Eighth Circuit law, such record mischaracterizations, paired with other indicia of improper motive, policy deviations, and disparate discipline, permit a jury to infer the stated reasons are unworthy of credence. *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874–75 (8th Cir. 2010); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–48 (2000); *Young v. Builders Steel Co.*, 754 F.3d 573, 578 (8th Cir. 2014). Summary judgement was not appropriate.

The district court could not accept Defendants' HR framing as dispositive while ignoring the supervisor's sworn testimony that undercuts it; deciding which version is true is a credibility determination reserved for the jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042–43 (8th Cir. 2011).

**C. Reed produced strong "similarly situated comparator" evidence under Eighth Circuit standards.**

Reed's comparator evidence is unusually concrete. Nathan Reichel held the same job title (Body Form Technician), worked the same night shift in Rotary

Cam, and was subject to the same production expectations as Reed. (Reichel Dep. 8:11-18; R. Doc. 30, at 21). Reichel testified that he is Caucasian and that Reed is African-American. (Reichel Dep. 8:1-8; App. 119, R. Doc. 30, at 20).

**1. Sleeping disparity comparator.**

Reichel admitted that photographs showed him asleep on the job and testified that he had "fell asleep more times than that," yet he was not given a formal written reprimand for sleeping. (Reichel Dep. 22:10–12; App. 133, R. Doc. 30, at 34). By contrast, Reed received a formal written reprimand for an alleged single instance of sleeping. (Reed Dep. 28:3–7; App. 151, R. Doc. 30, at 90).

Reichel further testified that at the time of Reed's write-up, he told supervisors that he did not believe Reed was sleeping and that the allegation was untrue. Reichel Dep. 48:7–15; App. 140a, R. Doc. 30, at 60). A reasonable jury could view this disparity as unequal discipline.

**2. Ring-mixing and selective responsibility.**

Yekel testified that when Reed and Reichel worked together, responsibility could be treated as shared, but that Reed ultimately took full responsibility for the ring-mixing incident, and Reichel received no discipline for that event. (Yekel Dep.

51:1–25; App. 155, R. Doc. 30, at 113). A jury could infer from this testimony that discipline was applied unevenly.

Taken together, this comparator evidence, same job, same shift, same expectations, but materially different disciplinary outcomes, permits a reasonable jury to find disparate discipline and pretext under Eighth Circuit standards. *Young v. Builders Steel Co.*, 754 F.3d 573, 578 (8th Cir. 2014); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–48 (2000).

**D. Reed produced additional pretext evidence: policy deviations and biased complaint-handling.**

Defendants rely on "honest belief" and "not a super-personnel department" principles. But those doctrines do not authorize summary judgment where there is evidence the employer's process was not honest, was unevenly applied, and rested on credibility judgments that a jury could find discriminatory.

Here, Defendants' policy required escalation of harassment complaints and an HR-led investigation. Schmidt testified that leadership was required to stop the conduct, obtain statements, and that "HR handles the investigation." (Schmidt Dep. 11:16–25; App. 157, 12:18–21; App. 158, R. Doc. 30, at 137–138). Yet the record supports that Yekel did not elevate Reed's complaints beyond speaking with the

accused employees and instead relied on their accounts. Yekel testified he "t[ook] everybody's word" and credited the "majority." (Yekel Dep. 27:15–22; App. 150, R. Doc. 30, at 89). Schmidt further testified that Yekel never came to him about Reed complaining of harassment at work, contrary to policy. (Schmidt Dep. 33:1-6; App. 162, R. Doc. 30, at 159).

At the same time, Yekel testified Reed was the only Black employee in the Rotary Cam unit. (Yekel Dep. 42:23–25; App. 164, R. Doc. 30, at 104). A reasonable jury could infer from this record that credibility allocations and disciplinary enforcement were influenced by race, even in the absence of overt racial slurs directed at Reed.

**E. The district court's "no racial remarks heard by Reed" framing improperly discounts circumstantial evidence.**

Defendants and the district court emphasized that Reed did not personally hear racist remarks directed at her. (Order, App. 201, Add. 4, R. Doc. 40 at 2–3, App. 209, Add. 12, 10–11; Defs.' Br. in Supp. of Summ. J., App. 13, R. Doc. 13). But Title VII does not require a plaintiff to personally hear racial slurs to establish discriminatory intent or conduct "based on race," which may be shown circumstantially. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).



Appellate Case: 25-2886 Page: 30 Date Filed: 01/05/2026 Entry ID: 5593553

Reed also offered evidence of racial context in the workplace. Reichel testified that he heard the N-word used at Remington and observed employees wearing T-shirts containing racial slurs, and that those employees were not terminated but only suspended. (Reichel Dep. 35:1–3; App. 139, R. Doc. 30, at 47). When viewed together with evidence of disparate discipline and biased handling of Reed's complaints, this circumstantial evidence could permit a reasonable jury to find discriminatory motive.

## IV. The district court erred in granting summary judgment on retaliation because Reed engaged in protected opposition and a jury could find but-for causation and pretext.

### A. Reed engaged in protected activity.

Protected opposition includes reporting conduct the employee reasonably believes constitutes racial harassment or discrimination. Reed reported sabotage and harassment and characterized the slug-guide incident as racially motivated, stating she felt her coworkers were being racist. (Order, Add 1, R. Doc. 40 at 2–3).

Reed testified she told supervisors that someone throwing away her handmade cardboard guiding tool felt like a "racial move" and that she believed her coworkers did it because she was a Black woman and they would not

communicate with her. This racial move complaint is acknowledged in the Order. (Order, Add 1, R. Doc. 40 at 3., Reed Dep. 58:3–6; R. App. 173, R. Doc. 30, at 225). "She informed them that she felt like someone threw away her handmade cardboard guiding tool as a "racial move." *Id*.

Supporting her claims, the email dated April 8, 2023, while never sent, shows Reed's state of mind at the time, describing her impression of all the conduct as a "hate crime". (Schmidt Dep. 34:25; App. 152a, R. Doc. 30, at 96).

Defendants' own summary-judgment briefing acknowledges this protected opposition, quoting Reed as stating, "I feel like they being racist." (Defs.' Br. in Supp. of Summ. J., App. 13, R. Doc. 13 at 21). The record provides Reed told her supervisors she felt the harassment was based on race. (Reed Dep. 58:3–6; R. App. 173, R. Doc. 30, at 225).

**B. A jury could find but-for causation based on escalating discipline and disputed write-ups.**

Defendants argued that a temporal gap defeats causation and that Reed cannot establish but-for causation. (Defs.' Br. in Supp. of Summ. J., App. 13, R. Doc. 13 at 19–24). But but-for causation may be proven circumstantially, and the



Appellate Case: 25-2886 Page: 32 Date Filed: 01/05/2026 Entry ID: 5593553

record here supports a retaliation narrative: Reed complained, was disbelieved, subjected to disputed discipline and heightened scrutiny, and ultimately terminated.

Critically, the purported "paper trail" supporting termination is itself disputed. Reed's partner Reichel contradicted key performance accusations, testifying that a supervisor's claim that the machines "weren't running all night" was false, a "lie," the company told against Reed, and that he and Reed had five machines running until approximately 12:30 a.m. (Reichel Dep. 19:7–25; App. 130, R. Doc. 30, at 31).

Reichel also testified that Defendants had evidence the "sleeping" allegation against Reed was untrue, and that he told supervisors contemporaneously that he did not believe Reed was sleeping. (Reichel Dep. 48:7–15; App. 140a, R. Doc. 30, at 60).

Yekel further admitted that Reed was effectively "found guilty" of the sleeping allegation before he spoke with her, while the white guy is never approached. (Yekel Dep. 20:3–20; App. 147, R. Doc. 30, at 83). A reasonable jury could conclude from this record that Reed would not have been terminated absent a retaliatory response to her complaints.



Appellate Case: 25-2886 Page: 33 Date Filed: 01/05/2026 Entry ID: 5593553

At summary judgment, these inferences must be drawn in Reed's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## V. The district court erred in granting summary judgment on hostile work environment because the record supports race-based harassment under the totality of circumstances and failure to remedy.

### A. The court improperly treated repeated sabotage/undermining as "isolated incidents."

Reed's evidence, viewed in her favor, describes recurring interference with her ability to do the job, not a handful of trivial events.

Reed testified that the day-shift group shut down machines when she came in, and that this happened "about 20 times." (Reed Dep. 50:16-21; App. 169, R. Doc. 30, at 217). Reichel corroborated that Reed complained to him "a couple of times" about coming in by herself and finding "all the machines off," and he connected that to days she was alone (i.e., he was off) and the four day-shift individuals she identified. (Reichel Dep. 10:19-25, App. 121, R. Doc. 30, at 22). Reichel also testified that, absent a shutdown situation, the machines "should be running during the pass-over." (Reichel Dep. 10:14-18, App. 121, R. Doc. 30, at 22).

On this record, a reasonable jury could find the pattern was recurrent and work-interfering, and the district court could not recharacterize it as merely isolated while granting summary judgment; no interference if white male Reichel was present.

**B. The record supports "based on race" and employer failure to remediate.**

Reichel also testified he had heard the N-word at Remington and had seen racist T-shirts; he further testified those incidents did not necessarily lead to termination (he described suspension). (Reichel Dep. 35:1–3; App. 139, R. Doc. 30, at 47). On racial context, the record contains evidence Reed was the only Black employee in Rotary Cam: "Zero, except her; so one." (Yekel Dep. 42:23–25; App. 164, R. Doc. 30, at 104).

A jury could consider that context, together with the pattern of shutoffs Reed described and the disputes about how her complaints were handled, in deciding whether the conduct and response were "based on race" under the totality of the circumstances.

On notice and remediation, the record supports that Reed complained about machines being shut off when she came into work, and Yekel acknowledged he

received that complaint and said he “investigate[d]” it by speaking with individuals on the prior shift. (Yekel Dep. 27:1-19, App. 150, R. Doc. 30, at 71–72).

His attitude of favoritism for the white males against the black Reed can be summed up by his testimony, “So if she's bothering them so much that they have got to harass her…” (Yekel Dep. 55:17-18; App. 156, R. Doc. 30, at 117).

Whether that response was adequate and effective remedial action, particularly in light of evidence Reed says the problem recurred “about 20 times”, is a jury issue under Rule 56 when reasonable inferences can cut both ways. (Reed Dep. 50:16-21; App. 169, R. Doc. 30, at 217). A reasonable conclusion under a totality of the circumstances is there was disparate treatment, discrimination, based on gender and race, and that at a minimum there are disputed facts and jury determinations that preclude a proper summary judgment.

As to speech, if liability turned on whether a supervisor ever uttered a racial slur to the plaintiff, employers could discriminate with impunity simply by keeping their bias verbal-free. Title VII reaches discriminatory conduct and disparate treatment proven by circumstantial evidence, unequal discipline, biased credibility calls, selective investigations, and manipulated “paper trails”, not just explicit racial epithets.

Title VII liability does not turn on whether a supervisor ever used a racial epithet in the plaintiff's presence. The Supreme Court has made clear that "direct evidence" is not required in Title VII cases and that discrimination may be proven through circumstantial evidence. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99–101 (2003). Likewise, once a plaintiff produces evidence from which a jury could find the employer's stated reason is pretextual, the factfinder may infer intentional discrimination from the combination of a prima facie case and evidence undermining the employer's explanation. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–48 (2000).

Consistent with that framework, the Eighth Circuit recognizes that discrimination/harassment can be shown without overt slurs because "not all incidents of harassment need to be discriminatory on their face," and facially neutral acts (including false accusations and other workplace conduct) may be considered in context where the record permits an inference of discriminatory animus. *Watson v. CEVA Logistics U.S., Inc.*, 619 F.3d 936, 942–44 (8th Cir. 2010).

## CONCLUSION

The district court's grant of summary judgment should be reversed. This is not a case about second-guessing a routine business judgment; it is a case where



Appellate Case: 25-2886 Page: 37 Date Filed: 01/05/2026 Entry ID: 5593553

Defendants' own testimony and internal records supply substantial evidence of pretext. The record contains concrete comparator evidence, documentary and testimonial proof that Reed was blamed through distorted reporting, and admissions reflecting one-sided credibility calls against the department's only Black female employee.

Resolving those conflicts requires credibility determinations and inference-drawing that Rule 56 forbids and that only a jury may make.

If Rule 56 is to have any meaning, it must protect a plaintiff's right to trial when the employer's stated reasons for termination are so thoroughly undermined by the employer's own testimony. Canary Reed has produced evidence from which a reasonable jury could find that her race and her protected complaints, not her performance, were the true drivers of her termination.

Wherefore, for the reasons stated above, Appellant Canary Reed respectfully requests that this Court REVERSE the judgment of the district court and REMAND this case for a trial on the merits.

Respectfully submitted,

Canary Reed, Appellant/Plaintiff

BY: /s/ Jody Shackelford



Appellate Case: 25-2886 Page: 38 Date Filed: 01/05/2026 Entry ID: 5593553

Jody L. Shackelford, Esq.
AR Bar #: 2019037
131 W. Church Street
P.O. Box 125,
Salem, Arkansas 72576
Phone: (870) 399-1440
Fax: 870-466-7574
Email: jody@goironrock.com

**CERTIFICATE OF SERVICE**

I, Jody L. Shackelford, do hereby state that I have on this 5th day of January 2026, served a true and correct copy of the above and foregoing by email to:

McKeeby, Paulo B. PMcKeeby@reedsmith.com

Pool, Hannah HPool@reedsmith.com

BY: /s/ Jody Shackelford

Jody L. Shackelford, Esq.

AR Bar #: 2019037

## CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32. This brief contains approximately 6,694 words, excluding the parts exempted by Fed. R. App. P. 32(f). This brief was prepared using a proportionally spaced font in Word in 14-point Times New Roman.

The brief and addendum have been scanned for viruses and that the brief is virus-free.

Dated: January 5, 2026

BY: /s/ Jody Shackelford

Jody L. Shackelford, Esq.

AR Bar #: 2019037