**No. 25-2886**

IN THE

# United States Court of Appeals for the Eighth Circuit

CANARY REED,

*Plaintiff- Appellant*,

v.

REMINGTON ARMS COMPANY, INC., THE KINETIC GROUP, INC., FORMERLY d/b/a VISTA OUTDOORS, INC., AND REMINGTON AMMUNITION,

*Defendants-Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF ARKANSAS, CENTRAL DIVISION

**BRIEF FOR DEFENDANT-APPELLEES**


**REED SMITH LLP**
Paulo B. McKeeby
Hannah B. Pool
2850 N. Harwood Street
Suite 1500
Dallas, Texas 75201
Phone: 469-680-4200
Facsimile: 469-680-4299
pmckeeby@reedsmith.com
hpool@reedsmith.com

*Counsel for Appellees The Kinetic Group, Inc. (formerly d/b/a Vista Outdoor Inc.) and Ammunition Operations, LLC, d/b/a Remington Ammunition*

## SUMMARY OF THE CASE AND ORAL ARGUMENT

This appeal arises from an order from the United States District Court for the Eastern District of Arkansas granting summary judgment in favor of The Kinetic Group, Inc. (formerly d/b/a Vista Outdoor Inc.), Ammunition Operations, LLC, d/b/a Remington Ammunition ("Remington" or "Appellees"), and Remington Arms Company, Inc.[1] on all claims asserted by Appellant Canary Reed ("Reed" or "Appellant"). Reed, an African American female, asserts claims of race and gender discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Arkansas Civil Rights Act ("ACRA").

In its summary judgment order, the district court correctly held that: (i) Reed failed to establish a *prima facie* case of discrimination, (ii) Reed failed to show Remington's legitimate, nondiscriminatory reasons for her termination were pretextual, (iii) the alleged coworker conduct about which Reed complained was not sufficiently severe or pervasive to create a hostile work environment, and (iv) Reed failed to demonstrate a causal connection between her complaints about her coworkers and her termination from employment. Remington respectfully requests that this Court affirm summary judgment and requests fifteen minutes per side should the Court determine oral argument would be helpful.

[1] Remington Arms Company. Inc. was not a proper party to the underlying lawsuit and has not entered an appearance in that lawsuit or this appeal.

## APPELLEES' CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and Eighth Cir. R. 26.1A, Appellees The Kinetic Group, Inc. (formerly d/b/a Vista Outdoor Inc.) and Ammunition Operations LLC d/b/a Remington respectfully advise the Court as follows:[2]

1. The Kinetic Group, Inc.'s parent corporations are CSG Elevate II Inc., CSG Elevate I Inc., CSG Ammo + a.s., Czechoslovak Group a.s., and CSG Fin a.s. No publicly held corporation owns 10% or more of The Kinetic Group, Inc.

2. Ammunition Operations LLC d/b/a Remington's parent corporations are Federal Cartridge Company, TKG Holding Company Inc., The Kinetic Group, Inc., CSG Elevate II Inc., CSG Elevate I Inc., CSG Ammo + a.s., Czechoslovak Group a.s., and CSG Fin a.s. No publicly held corporation owns 10% or more of Ammunition Operations LLC d/b/a Remington.

[2] The Kinetic Group, Inc. and Remington Arms Company Inc. are not proper parties to this matter. Remington Arms Company Inc. has not entered an appearance in this appeal or in the underlying matter. The Kinetic Group, Inc. reserves its right to contest its status as a party.

**TABLE OF CONTENTS**

SUMMARY OF THE CASE AND ORAL ARGUMENT ....................................... i

APPELLEES' CORPORATE DISCLOSURE STATEMENT ................................ ii

TABLE OF CONTENTS ........................................................................................ iii

TABLE OF AUTHORITIES..................................**Error! Bookmark not defined.**

STATEMENT OF THE ISSUES ..........................................................................1

STATEMENT OF THE CASE.............................................................................3

Appellant's Role at Remington.....................................................................3

Appellant's Hostile Work Environment Claims .............................................4

Appellant's Complaints and Retaliation Claim ..............................................4

Appellant's Performance Counseling and Confrontation with a Supervisor.....................................................................................................5

Procedural History and Relevant Rulings .......................................................7

Discrimination ...........................................................................................8

Hostile Work Environment........................................................................8

Retaliation .................................................................................................9

SUMMARY OF THE ARGUMENT ....................................................................9

ARGUMENT ........................................................................................................10

I. This Court reviews a grant of summary judgment de novo. ..........................10

II. The district court properly granted summary judgment without making credibility determinations. .........................................................................11

A. The district court correctly recognized that disagreements over the circumstances surrounding Appellant's write-ups do not create a triable issue regarding discriminatory or retaliatory intent. ......................................................................................................12

B. The district court correctly recognized that disagreements surrounding Appellant's confrontation with a supervisor do not create a triable issue regarding discriminatory or retaliatory intent. ......................................................................................................17

III. The district court properly granted summary judgment where Appellant's purported comparator evidence and alleged policy violations failed to establish pretext. ..........................................................19

A. The district court correctly concluded that Reichel is not a valid comparator. .....20

B. The district court correctly concluded that Yekel's investigations did not create an inference of pretext. .....22

C. The district court correctly applied Eighth Circuit precedent in concluding that Appellant did not raise a triable inference of pretext. .....24

IV. The district court properly granted summary judgment on Appellant's retaliation claim based on the lack of evidence of a causal connection between any protected activity and Appellant's termination. .....28

V. The district court properly granted summary judgment on Appellant's hostile work environment claim based on the lack of evidence of severe or pervasive conduct or discriminatory animus .....31

CONCLUSION .....35

CERTIFICATE OF COMPLIANCE .....36

CERTIFICATE OF SERVICE .....37



Appellate Case: 25-2886 Page: 5 Date Filed: 02/24/2026 Entry ID: 5611261

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Anderson v. Family Dollar Stores of Arkansas, Inc.*,
579 F.3d 858 (8th Cir. 2009) ....................................................................11

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..................................................................................18

*Bedford v. Doe*,
880 F.3d 993 (8th Cir. 2018) ....................................................................11

*Brooks v. Ameren*,
345 F.3d 986 (8th Cir. 2002) ....................................................................16

*Canada v. Union Elec. Co.*,
135 F.3d 1211 (8th Cir. 1997) ..................................................................10

*Clark v. Runyon*,
218 F.3d 915 (8th Cir. 2000) ....................................................................20

*Elam v. Regions Fin. Corp.*,
601 F.3d 873 (8th Cir. 2010) ....................................................................21

*Euerle-Wehle v. United Parcel Serv., Inc.*,
181 F.3d 898 (8th Cir. 1999) ..............................................................12, 23

*Gibson v. Am. Greetings Corp.*,
670 F.3d 844 (8th Cir. 2012) ....................................................................11

*Green v. Franklin Nat. Bank of Minneapolis*,
459 F.3d 903 (8th Cir. 2006) ..............................................................29, 31

*Harris v. Forklift Sys., Inc.*,
510 U.S. 17 (1993)...............................................................................32, 34

*Harvey v. Anheuser-Busch, Inc.*,
38 F.3d 968 (8th Cir. 1994) ......................................................................21

*Hervey v. Cnty. of Koochiching*,
527 F.3d 711 (8th Cir. 2008), cert. denied, 555 U.S. 1137 (2009)......................30

*Hitt v. Harsco Corp.*,
356 F.3d 920 (8th Cir. 2004) ....................................................................13

*Lake v. Yellow Transp., Inc.*,
596 F.3d 871 (8th Cir. 2010) ..............................................................25, 26

*Lenzen v. Workers Comp. Reinsurance Ass'n*,
705 F.3d 816 (8th Cir. 2013) ....................................................................31

*Luckie v. Ameritech Corp.*,
389 F.3d 708 (7th Cir. 2004) ....................................................................34

*McCullough v. Univ. of Ark. for Med. Scis.*,
559 F.3d 855 (8th Cir. 2009) ........................................................13, 18, 24

*Oliver v. Johanson*,
329 F. Supp. 3d 684 (W.D. Ark. 2018) ......................................................10

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000).......................................................................25, 26, 27

*Ridout v. JBS USA, LLC*,
716 F.3d 1079 (8th Cir. 2013) ..................................................................20

*Ross v. Douglas County*,
234 F.3d 391 (8th Cir. 2000) ....................................................................32

*Scroggins v. Univ. of Minn.*,
221 F.3d 1042 (8th Cir. 2000) ..................................................................13

*Singletary v. Mo. Dep't of Corr.*,
423 F.3d 886 (8th Cir. 2005) ....................................................................34

*Starkey v. Amber Enterprises, Inc.*,
987 F.3d 758 (8th Cir. 2021) ....................................................................11

*Tolen v. Ashcroft*,
377 F.3d 879 (8th Cir. 2004) ....................................................................20

*Torgerson v. City of Rochester*,
643 F.3d 1031 (8th Cir. 20011) *(en banc)* ..................................................10



Appellate Case: 25-2886 Page: 7 Date Filed: 02/24/2026 Entry ID: 5611261

*Wilking v. Cty. of Ramsey*,
153 F.3d 869 (8th Cir. 1998) ........................................................................ 13

*Young v. Builders Steel Co.*,
754 F.3d 573 (8th Cir. 2014) ................................................................ 25, 27, 28

**Statutes**

42 U.S.C. § 2000e–2(a)(1) ............................................................................ 11

**Rules**

Fed. R. Civ. P. 56(a) ..................................................................................... 10

## STATEMENT OF THE ISSUES

**I. This Court reviews a grant of summary judgment de novo.**

*Starkey v. Amber Enterprises, Inc.*, 987 F.3d 758 (8th Cir. 2021)

**II. The district court properly granted summary judgment without making credibility determinations.**

*McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855 (8th Cir. 2009)

*Euerle-Wehle v. United Parcel Serv., Inc.*, 181 F.3d 898 (8th Cir. 1999)

*Wilking v. Cty. of Ramsey*, 153 F.3d 869 (8th Cir. 1998)

*Brooks v. Ameren,* 345 F.3d 986 (8th Cir. 2002)

**III. The district court properly granted summary judgment where Appellant's purported comparator evidence and alleged policy violations failed to establish pretext.**

*Ridout v. JBS USA, LLC*, 716 F.3d 1079 (8th Cir. 2013)

*Clark v. Runyon*, 218 F.3d 915 (8th Cir. 2000)

*Elam v. Regions Fin. Corp.*, 601 F.3d 873 (8th Cir. 2010)

*McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855 (8th Cir. 2009)

**IV. The district court properly granted summary judgment on Appellant's retaliation claim based on the lack of evidence of a causal connection between any protected activity and Appellant's termination.**

*Green v. Franklin Nat. Bank of Minneapolis*, 459 F.3d 903 (8th Cir. 2006)

*Hervey v. Cnty. of Koochiching*, 527 F.3d 711 (8th Cir. 2008), cert. denied, 555 U.S. 1137 (2009)

*Lenzen v. Workers Comp. Reinsurance Ass'n*, 705 F.3d 816 (8th Cir. 2013)

**V. The district court properly granted summary judgment on Appellant's hostile work environment claim based on the lack of evidence of severe or pervasive conduct or discriminatory animus.**

*Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886 (8th Cir. 2005)

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)



Appellate Case: 25-2886 Page: 10 Date Filed: 02/24/2026 Entry ID: 5611261

## STATEMENT OF THE CASE

Appellant alleged Remington discriminated against her on the bases of her gender and race, that her coworkers subjected her to a hostile work environment based on her gender and race, and that Remington retaliated against her after she complained about the alleged conduct of her coworkers. **App. 7-8; R. Doc. 2, at 7-8**. She pled four counts against Remington: (i) Title VII employment discrimination based on gender and race; (ii) Title VII hostile work environment; (iii) Title VII retaliation; and (iv) violations of the ACRA. **App. 7-8; R. Doc. 2, at 7-8**.

### Appellant's Role at Remington

Appellant was hired at Remington's Lonoke, Arkansas facility in May of 2021. **App. 165; R. Doc. 30 at 188.** On or about December 13, 2021, she became a Body Form Technician in Remington's Rotary Cam department. **Aples App. 1; R. Doc. 14-1 at 2.** In that role, Appellant operated heavy machinery used in the production of shotgun shells. **Aples App. 12; R. Doc. 30 at 186.** Among Appellant's job duties were repairing, maintaining and operating the machines for which she was responsible to ensure consistent production. **Aples App. 5-6; R. Doc. 14-6 at 2-3.** Part of the operations process involved segregating plastic cutoff rings for recycling. ***Id.*** Conrad Yekel ("Yekel") was Appellant's supervisor prior to her termination, and Appellant worked in the Rotary Cam department until her termination in October 2023. **App. 164; R. Doc. 30 at 187**; **Aples App. 2; R. Doc. 14-1 at 3.**

### Appellant's Hostile Work Environment Claims

Appellant alleges that four of her former Rotary Cam department co-workers (the "Rotary Cam Colleagues") engaged in various conduct that she contends constituted workplace harassment. **App. 3-4; R. Doc. 2, at 3-4.** In particular, she alleges that, on one or two occasions, some or all of the Rotary Cam Colleagues discarded cardboard tools she created to use on her machines, falsely complained about her timeliness arriving at work, were "standoffish" and refused to communicate with her, wrote in the company logbook once that "no one came in" for a shift which Appellant claims she did not miss, occasionally turned off Appellant's machines before her shift began, occasionally blamed Appellant for machine failures, and accused Appellant once of improperly mixing colored rings. **App. 3-4; R. Doc. 2 at 3-4; App. 169; R. Doc. 30 at 217; Aples App. 13-16, 21, 27; R. Doc. 30 at 193, 198, 207-208, 237, 302.** As the district court noted, when questioned about these allegations in her deposition, Appellant testified that she never heard anyone at Remington make a racial remark in connection with these allegations, and specifically that the Rotary Cam Colleagues never said anything that was connected to her race, but that she believed the Rotary Cam Colleagues' alleged actions reflected racial animus on their part. **Add. 4; App. 201, R. Doc. 40 at 2.**

### Appellant's Complaints and Retaliation Claim

On April 8, 2023, Appellant attempted to send an email to Senior Director of

Human Resources Darnetha Elmore ("Elmore") and Director of Operations Adam White ("White") complaining about the Rotary Cam Colleagues' conduct. **Aples App. 18; R. Doc. 30 at 212.** The email, however, was never sent, most likely because Appellant formatted the recipients' email addresses incorrectly. **Aples App. 19; R. Doc. 30 at 213.** Months later, Appellant spoke with Elmore and White separately about her difficulties with the Rotary Cam Colleagues. **Aples App. 17, 22, 23-25; R. Doc. 30 at 207, 241-43, 247.** When questioned in her deposition, Appellant could not remember whether she told White or Elmore that she believed the Rotary Cam Colleagues' conduct was based on her race or gender. **Aples App. 24, 26; R. Doc. 30 at 243, 253; App. 176; R. Doc. 30 at 254.**

In or before April 2023, Appellant complained to Yekel and Christina Beauman ("Beauman"), the first shift supervisor, that she felt one of the Rotary Cam Colleagues' disposing of her handmade cardboard tool was a "racial move." **App. 172-74; R. Doc. 30 at 224-26; Aples App. 18, 20; R. Doc. 30 at 212, 219.** She testified that her belief was based on the fact that the Rotary Cam Colleagues knew the tool was hers, that they were white men, and because they did not adequately communicate with her. **App. 166-167; R. Doc. 30 at 204-205.**

**Appellant's Performance Counseling and Confrontation with a Supervisor**

On April 12, 2023, Remington issued Appellant a write-up for sleeping during a shift. **App. 151; R. Doc. 30 at 90.** Six months later, on October 12, 2023, Yekel

counseled Appellant about two separate performance issues – her failure to repair a machine during her October 4, 2023 shift and her failure to run the required number of machines during her October 8, 2023 shift. **App. 178; R. Doc. 30 at 320; Aples App. 7, 9, 28; R. Doc. 14-6 at 5, R. Doc. 14-5 at 2, R. Doc. 30 at 319.** In the employee counseling memo, Yekel noted Appellant admitted fault for the machine breakdown on October 4, 2023. **Aples App. 7, 9; R. Doc. 14-6 at 5, R. Doc. 14-5 at 2.** Appellant confirmed the same in her deposition. **App. 178; R. Doc. 30 at 320.** Regarding the incident on October 8, 2023, Yekel noted Appellant stated to another supervisor on October 11, 2023, that she was too busy to run all the machines on her shift, which she was expected to do**. Aples App. 9; R. Doc. 14-5 at 2.**

Also on October 12, 2023, Yekel observed that Appellant had failed to properly segregate plastic cutoff rings in the ring room during her shift. **Aples App. 7; R. Doc. 14-6 at 4.** Remington requires employees to keep plastic scraps, referred to as "cutoff rings," segregated by color for recycling. ***Id.*** Mixing plastic colors before recycling brings the plastic scraps out of specification, which means that those scraps cannot be recycled and must be discarded. ***Id.*** Appellant admitted fault for this incident and that she was responsible for the ring room on that shift. **Aples App. 4; R. Doc. 14-3 at 2; App. 154; R. Doc. 30 at 109; Aples App. 37; R. Doc. 30 at 120.** On October 13, 2023, Remington prepared a counseling document related to this incident. **Aples App. 2, 4; R. Doc. 14-1 at 3, R. Doc. 14-3 at 2.**

Later, during a discussion with Appellant in the supervisors' office, Yekel witnessed what he regarded to be Appellant's aggressive behavior toward another supervisor, Travis Zeman ("Zeman"). **Aples App. 7; R. Doc. 14-6 at 4.** Yekel observed Appellant invade Zeman's personal space, yell at him, and announce that she would not speak with him. ***Id.*** Yekel had to ask Appellant to separate from Zeman, to calm down, and to apologize to Zeman, which Appellant refused to do. **Aples App. 7-8; R. Doc. 14-6 at 4-5.**

Based on Appellant's performance issues and her behavior toward Zeman, Yekel made the initial decision to terminate Appellant's employment. **Aples App. 8; R. Doc. 14-6 at 5.** Yekel discussed this decision with Senior Manager Clayton Schmidt ("Schmidt"), who approved the termination and communicated his approval to Remington's Human Resources department. **Aples App. 2; R. Doc. 14-1 at 3.** On October 20, 2023, Schmidt informed Appellant that her employment was terminated. ***Id.***

## Procedural History and Relevant Rulings

On August 14, 2024, Appellant filed her amended complaint in the underlying lawsuit, alleging that Remington discriminated against her based on her race and gender, created a hostile work environment, and retaliated against her in violation of Title VII and the Arkansas Civil Rights Act. **App. 7-8; R. Doc. 2, at 7-8.** Based on the undisputed facts, on May 7, 2025, Remington filed a Motion for Summary

Judgment, arguing that each of Appellant's claims should be dismissed. **App. 11; R. Doc. 12, at 1.** On September 11, 2025, the district court granted Remington's Motion for Summary Judgment on all of Appellant's claims. **Add. 15; App. 212, R. Doc. 40 at 13.** Specifically, the district court held as follows:

<u>Discrimination</u>

(1) Appellant failed to establish a *prima facie* case of discrimination because she did not point to evidence that gave rise to an inference of discrimination. **Add. 9; App. 206, R. Doc. 40 at 7.**

(2) Remington provided a legitimate, nondiscriminatory reason for Appellant's termination: her failure to follow operational procedure on at least three occasions and aggressive behavior toward a supervisor. **Add. 10; App. 207, R. Doc. 40 at 8.**

(3) There was insufficient evidence for a jury to infer Remington's reason for terminating Appellant was pretext. **Add. 12; App. 209, R. Doc. 40 at 10.**

<u>Hostile Work Environment</u>

(1) The alleged harassment of which Appellant complained was not sufficiently hostile or abusive to support a hostile work environment claim. **Add. 13; App. 210, R. Doc. 40 at 11.**

(2) Appellant did not provide evidence beyond her own speculation that any alleged mistreatment was due to her protected characteristics. ***Id.***

Retaliation

(1) There was no causal connection between Appellant's participation in protected activity and her termination. **Add. 14; App. 211, R. Doc. 40 at 12.**

(2) Remington had a legitimate, nondiscriminatory reason for Appellant's termination. ***Id.***

(3) Appellant did not provide sufficient evidence to support a finding of pretext. ***Id.***

Subsequently, Appellant initiated this appeal.

## SUMMARY OF THE ARGUMENT

The district court correctly granted summary judgment on all of Appellant's claims. Appellant's brief misstates both the record and the district court's ruling.

First, the district court did not make improper credibility determinations. Rather, it correctly concluded that Appellant's evidence was insufficient to raise an inference of discriminatory or retaliatory motive or create a triable issue of pretext. Appellant's disputes regarding her write-ups are immaterial because the relevant inquiry is whether Remington honestly believed Appellant engaged in the cited conduct – not whether she was in fact responsible for the performance issues and behavior that lead to her termination. The record establishes, at the least, that Remington held that good-faith belief.

Appellant's comparator and policy-deviation theories likewise fail; the record

does not show her proposed comparator was similarly situated as to misconduct or discipline, nor that Remington deviated from any policy so as to warrant any inference of pretext for Appellant's termination.

Finally, Appellant's retaliation claim fails because the record lacks any evidence connecting her complaints to her termination six months later, and her hostile work environment claim fails because the alleged conduct on which she relies was neither severe nor pervasive so as to alter the conditions of her employment. The district court's grant of summary judgment should accordingly be affirmed.

## ARGUMENT

### I. This Court reviews a grant of summary judgment de novo.

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant is entitled to judgment as a matter of law." "The court must review the facts in the light most favorable to the opposing party and give that party the benefit of any inferences that can be drawn from those facts." *Oliver v. Johanson*, 329 F. Supp. 3d 684, 689 (W.D. Ark. 2018) (citing *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212-13 (8th Cir. 1997)). Once the moving party has met its burden, the non-moving party must respond by submitting evidence of specific facts showing the presence of a genuine issue for trial. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 20011) *(en banc)*. "The nonmoving party must do more than raise some metaphysical doubt about the material facts . . . and cannot rest on mere

denials or allegations." *Bedford v. Doe*, 880 F.3d 993, 997 (8th Cir. 2018) (citing *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). Instead, the nonmoving party must present enough evidence that a jury could reasonably find in her favor. *Id.* This Court reviews "the district court's grant of summary judgment de novo." *Starkey v. Amber Enterprises, Inc.*, 987 F.3d 758, 763 (8th Cir. 2021).

## II. The district court properly granted summary judgment without making credibility determinations.

Appellant brings her gender and race discrimination claims and her retaliation claim under Title VII and the ACRA, which "are governed by the same standards." *Anderson v. Family Dollar Stores of Arkansas, Inc.*, 579 F.3d 858, 862 (8th Cir. 2009). Under Title VII and the ACRA, an employer may not discriminate against any "individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Id.* (citing 42 U.S.C. § 2000e–2(a)(1)).

Appellant's discrimination and retaliation claims fail because she cannot show that the circumstances surrounding her termination gave rise to an inference of discrimination or retaliation or that Remington's legitimate, nondiscriminatory reasons for her termination were pretextual. The district court correctly concluded that Appellant's evidence "does not raise a reasonable inference that unlawful sex or race discrimination motivated her termination or that the Defendant's reason for her termination was pretext." Add. 12; App. 209, R. Doc. 40 at 10, *see* Add. 14; App.

211, R. Doc. 40 at 12 (holding Appellant presented insufficient evidence to support a pretext argument as to retaliation.)

Appellant contends that the district court "resolved disputed facts and credibility against her," but this argument misstates the district court's order granting summary judgment. Appellant's Br. at 15. First of all, Appellant offers no specifics as to any particular witness or witnesses the district court supposedly found more credible than others. Moreover, the district court did not resolve any disputed issues of fact, and Appellant's disagreement continues to be with Remington's assessment of her performance and her conduct. Thus, the district court did not weigh credibility or resolve factual disputes; rather, it properly concluded that Appellant's evidence was insufficient to create a triable issue of pretext. *See Euerle-Wehle v. United Parcel Serv., Inc.*, 181 F.3d 898, 900 (8th Cir. 1999) (concluding that the defendant, not the district court, had made the credibility determinations and had done so "reasonably and in good faith").

**A. The district court correctly recognized that disagreements over the circumstances surrounding Appellant's write-ups do not create a triable issue regarding discriminatory or retaliatory intent.**

The thrust of Appellant's argument asks this Court to act as a super-personnel department and re-examine Remington's business decisions in assessing her performance and conduct. Longstanding Eighth Circuit precedent squarely

forecloses that approach. The Court's role is not to determine whether Appellant in fact engaged in the conduct for which she was disciplined and eventually terminated, but whether there is a fact issue as to whether Remington honestly and in good faith believed that Appellant's performance deficiencies and conduct occurred. *See McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 861–62 (8th Cir. 2009) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 924 (8th Cir. 2004); *Scroggins v. Univ. of Minn.*, 221 F.3d 1042, 1045 (8th Cir. 2000)). So long as an employer's proffered reason was the true reason for the challenged decision, courts should not second-guess "whether [that] reason was wise, fair, or even correct." *Wilking v. Cty. of Ramsey*, 153 F.3d 869, 873 (8th Cir. 1998) (citation omitted). The district court properly applied this framework here and reasonably concluded that Appellant failed to produce evidence of pretext or discriminatory or retaliatory intent. Appellant's effort to recast a disagreement with Remington's business judgment as a credibility dispute fails as a matter of law.

Specifically, Appellant points to the disciplinary write-ups she received for failing to run the required number of machines during a shift and for sleeping while on duty. Appellant's Br. 15-16, 25-26. As the district court correctly concluded, even if there were disputes regarding relative perceptions as to whether Appellant operated all the machines for which she was responsible or was in fact asleep during a shift, these disputes are not material, and without additional evidence, they do not



Appellate Case: 25-2886 Page: 21 Date Filed: 02/24/2026 Entry ID: 5611261

raise a fact issue as to discriminatory or retaliatory intent. Add. 12; App. 209, R. Doc. 40 at 10. In other words, even if Appellant disputes that she engaged in the underlying conduct, the district court properly declined Appellant's invitation for the district court to second-guess Remington's disciplinary decisions or to substitute its judgment for Remington's.

Moreover, Appellant's record citations do not support her characterization of the disciplinary write-ups and omit critical context. Regarding the counseling for failing to operate the required number of machines during a shift, Appellant cites her coworker Nathan Reichel's ("Reichel") testimony that he and Appellant ran five machines until approximately 12:30 a.m. to rebut a supervisor's statement that one machine had been down "all night." Appellant's Br. 15. The record shows Appellant and Reichel worked the night shift – from 7:00 pm to 7:00 am – and that they were jointly responsible for ensuring the machines in the department were running for the duration of their shift. App. 130-31; R. Doc. 30 at 31-32. Reichel testified that he left the shift early, around 12:30 a.m., that all the machines were running when he left, and that he did not know whether Appellant kept all of the machines operating after his departure. *Id*. As the district court observed, the written counseling memorandum for this incident reflects that Appellant acknowledged she failed to operate the required number of machines on that shift because she was "too busy running the other three machines that [she] had" after Reichel left. Add. 5-6; App.

202-03, R. Doc. 40 at 3-4. The counseling memorandum provides that Appellant was disciplined because Rotary Cam Technicians were expected to be able to singlehandedly keep all of the machines in the department running. Aples App. 9; R. Doc. 14-5 at 2. The timing of the machine shutdown was immaterial – the discipline was based on Appellant's failure to run all of the Rotary Cam machines during her shift.

Appellant's counseling for sleeping during a shift likewise reflected Remington's good-faith, legitimate assessment. Appellant argues the write up was "heavily disputed" because Reichel testified he told supervisors he did not believe she was sleeping. Appellant's Br. 15. But the record shows the write-up relied in part on a photograph of Appellant appearing asleep, and while Reichel testified he told supervisors he did not believe Appellant had been asleep because he saw her awake shortly before the photo was taken, he admitted in his deposition that Appellant could have fallen asleep in the interim. App. 140(a); R. Doc. 30 at 60; Aples App. 33, 41; R. Doc. 30 at 84, 61.

Appellant further asserts she was "found guilty" of sleeping before Yekel administered the write-up, but that contention omits undisputed testimony that Beauman – the supervisor on duty during the relevant shift – investigated the incident, prepared the written counseling, and provided it to Yekel to administer on a subsequent shift. Appellant's Br. 16; Aples App. 33; R. Doc. 30 at 82; App. 147;



Appellate Case: 25-2886 Page: 23 Date Filed: 02/24/2026 Entry ID: 5611261

R. Doc. 30 at 83. The record reflects that Beauman reasonably concluded Appellant had been sleeping after Appellant failed to fully awaken despite being nudged multiple times. Aples App. 33; R. Doc. 30 at 84. Moreover, Appellant fails to mention in her brief that she admitted on the written counseling memorandum that she had been sleeping, stating "[a]t end of shift, made a mistake. Will not happen again." Aples App. 29; R. Doc. 30 at 324.

In addition, Appellant's own assessment of her performance does not raise a genuine issue of material fact. She emphasizes her testimony that she and Reichel "always had the best production" and "outran the other shifts." Appellant's Br. 11. But such conclusory statements do not contradict Remington's good-faith belief that Appellant violated its policies and was aggressive with a supervisor, nor are they sufficient to create a fact issue. *See Brooks v. Ameren,* 345 F.3d 986, 988 (8th Cir. 2002) ("[A]n employee's subjective assessment of her performance is insufficient to create a fact issue on summary judgment.")

Accordingly, the record establishes that Remington genuinely believed Appellant committed the cited infractions, and it was not the district court's role to second-guess Remington's assessment of those infractions. Because Appellant failed to present evidence from which a reasonable jury could infer that Remington's actions were motivated by discriminatory or retaliatory animus rather than a good-

faith belief that Appellant engaged in misconduct warranting termination, the district court correctly granted summary judgment.

### B. The district court correctly recognized that disagreements surrounding Appellant's confrontation with a supervisor do not create a triable issue regarding discriminatory or retaliatory intent.

Appellant devotes a substantial portion of her brief to attempt to manufacture a factual dispute concerning her interaction between herself and Zeman, which precipitated her termination. Appellant's Br. at 16–19. Appellant argues that Schmidt, who observed the interaction, told Human Resources representatives that Appellant interrupted Zeman, while Yekel testified that Zeman "jumped into the conversation." Appellant's Br. at 17. From this, Appellant asserts that she could not have interrupted Zeman because Zeman "inserted himself" into the exchange. *See* Appellant's Br. at 18 ("A reasonable jury could conclude the company's HR narrative, [Appellant] 'interrupted and yelled at [Zeman,]' is not a neutral account but a loaded reframing that turns [Zeman's] interjection into [Appellant's] misconduct.")

The record does not support this characterization. When asked during his deposition whether Appellant indicated that she felt Zeman was interrupting the conversation, Yekel testified that Zeman spoke "during a brief pause" and was "just adding some input or adding on to the conversation because *he was part of the*

*conversation to begin with*." App. 144-45; R. Doc. 30 at 76-77 (emphasis added). Nor does Appellant's selective quotation of Yekel's testimony – that Zeman stated he was "not trying to be rude" when he spoke – rebut Schmidt and Yekel's perception that Appellant behaved aggressively toward Zeman. Appellant's Br. 17.

The undisputed record establishes that, after Zeman began speaking to Appellant, Appellant became aggressive, Yekel had to instruct Appellant to separate from Zeman and calm down, and that Appellant refused to apologize to Zeman. Aples App. 7-8; R. Doc. 14-6 at 4-5. The record further shows that Schmidt – the decisionmaker who approved Yekel's recommendation to terminate Appellant's employment – personally observed the incident and reported to Human Resources that Appellant had yelled at Zeman. Appellant's Br. 17.

Moreover, whether Zeman interrupted the conversation and whether that interruption provoked Appellant's behavior is immaterial. A factual dispute is material only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The relevant inquiry is Appellant's conduct during the interaction and Yekel and Schmidt's legitimate belief that her behavior toward Zeman was insubordinate and confrontational. *See McCullough*, 559 F.3d at 861–62.

Appellant also misstates the record by suggesting that the district court made a credibility determination by accepting Remington's framing – that Appellant

interrupted Zeman – while "ignoring [Yekel's] sworn testimony" that Zeman interrupted the conversation. Appellant's Br. at 19. To the contrary, the district court expressly acknowledged that Appellant "contend[ed] that Zeman interrupted her conversation with Yekel," yet still correctly concluded that Appellant's evidence "did not raise a reasonable inference that unlawful sex or race discrimination motivated her termination or that [Remington's] stated reason was pretextual." Add. 6, 12; App. 203, 209, R. Doc. 40 at 4, 10. The district court thus properly recognized that Appellant's "interruption" argument did not create a triable issue of discriminatory or retaliatory intent as to her termination.

**III. The district court properly granted summary judgment where Appellant's purported comparator evidence and alleged policy violations failed to establish pretext.**

Appellant further rests her argument on the theories that: (i) Reichel, a white male Body Form Technician, was treated more favorably than Appellant; and (ii) Yekel's investigation of her complaints deviated from Remington's policies. Appellant's Br. 19-22. Neither theory creates a genuine issue of material fact. Reichel is not a proper comparator because the record does not establish that he engaged in comparable successive misconduct, that Remington knew of his misconduct, or that Remington failed to discipline him for misconduct of which it was aware. And Yekel's investigations did not give rise to an inference of pretext because the record does not support the assertion that he deviated from company

policy or otherwise acted based on unlawful motivation. Further, the cases on which Appellant relies to support these assertions are inapposite.

**A. The district court correctly concluded that Reichel is not a valid comparator.**

Appellant argues that Reichel, her white male coworker, was treated more favorably than she, and that this creates a triable issue as to pretext. Appellant's Br. at 19-21. This argument fails for multiple reasons.

As a threshold matter, Reichel is not similarly situated to Appellant for the purposes of her termination. The Eighth Circuit requires that a comparator be "similarly situated in all relevant respects." *Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1085 (8th Cir. 2013) (citation omitted). To satisfy this standard, a plaintiff must show that the comparator "dealt with the same supervisor, was subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000). Appellant was terminated not for any single incident but based on a rapid succession of policy violations culminating in aggressive behavior toward a supervisor. The record contains no evidence that Reichel engaged in comparable misconduct, let alone that he exhibited aggression toward a supervisor. Accordingly, Reichel is not a valid comparator with respect to Appellant's termination. *See Tolen v. Ashcroft*, 377 F.3d 879, 883 (8th Cir. 2004) ("[T]he frequency of [plaintiff's] misconduct distinguishes him from his offered comparables.")



Appellate Case: 25-2886 Page: 28 Date Filed: 02/24/2026 Entry ID: 5611261

Appellant's specific arguments regarding sleeping and ring mixing likewise do not support an inference of discrimination or retaliation. Appellant asserts that Reichel engaged in conduct similar to hers when he slept on the job and mixed cutoff rings. Appellant's Br. at 19-21. This argument omits undisputed record evidence that: (i) Remington was not aware of Reichel sleeping on the job – a fact to which Yekel and Reichel both testified – and (ii) Reichel in fact did receive a write-up when he mixed colored rings – the same discipline as Appellant received. App. 148; R. Doc. 30 at 85; App. 140; R. Doc. 30 at 59; Aples App. 32, 34; R. Doc. 30 at 82, 86. That Remington did not discipline a white male employee for conduct about which it was unaware is not probative of pretext. *See Elam v. Regions Fin. Corp.*, 601 F.3d 873, 881 (8th Cir. 2010) (no fact issue on pretext where plaintiff did not present evidence that supervisors were aware of purported comparators' alleged misconduct). And the fact that Reichel received discipline for the same conduct as Appellant undermines her assertion that he was treated more favorably. *See Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972 (8th Cir. 1994) (citations omitted) ("Employees are similarly situated when they are involved in or accused of the same offense and are disciplined in different ways.")

Appellant further disregards key evidence in asserting that she and Reichel shared "50/50" responsibility for mixing cutoff rings on October 12, 2023. Appellant's Br. at 20. The undisputed record establishes that: (i) Appellant and

Reichel had agreed that Appellant would be responsible for segregating plastic cutoff rings in the ring room on the day in question while Reichel tended to other responsibilities in another floor of their area; and (ii) Appellant acknowledged during Yekel's investigation that she alone had failed to properly segregate the plastic rings. Aples App. 4; R. Doc. 14-3 at 2; App. 154; R. Doc. 30 at 109. As the district court found, "Yekel testified that [Appellant] took 100 percent of the responsibility for the colored rings incident on October 12th because she was working in the ring room that day and Reichel was not." Add. 9; App. 206, R. Doc. 40 at 7. The district court therefore correctly concluded that, "the fact that Plaintiff was disciplined for the rings and Reiche[l] was not, does not suggest racial or gender discrimination." Add. 10; App. 207, R. Doc. 40 at 8. Accordingly, Appellant's comparator evidence fails to establish a triable issue of pretext.

**B. The district court correctly concluded that Yekel's investigations did not create an inference of pretext.**

Appellant argues that Yekel departed from Company policy in addressing her complaints and asserts that he did not elevate her complaints beyond speaking with the accused employees. Appellant's Br. 21-22. The undisputed record squarely refutes these claims. As the district court recognized, Yekel testified that he consulted with Human Resources Director Beth Ellis ("Ellis") multiple times regarding Appellant's complaints and sought Ellis's guidance during his investigations. Add. 11; App. 210, R. Doc. 40 at 9; Aples App. 35; R. Doc. 30 at 115.



Appellate Case: 25-2886 Page: 30 Date Filed: 02/24/2026 Entry ID: 5611261

Appellant also mischaracterizes Yekel's deposition testimony regarding his investigations – particularly her repeated assertions that he "took everybody's word" but hers. Appellant's Br. at 6, 22. In context, Yekel's testimony reflects that, when Appellant complained about her coworkers, Yekel interviewed Appellant and the employees Appellant accused, and assessed their respective accounts. Aples App. 34-35; R. Doc. 30 at 114-115. He ultimately credited the accounts of the other employees because he found no evidence corroborating Appellant's assertions of discriminatory or improper motive. *Id*. That is not evidence of a "biased" investigation; it is simply a determination made by a supervisor in the course of investigating a workplace complaint. *See Euerle-Wehle*, 181 F.3d at 900 (explaining that it is for the employer – not the court – to make such credibility determinations, so long as they are reasonable and in good faith). Accordingly, the fact that Yekel found Appellant's complaints unsubstantiated does not somehow transform his investigations into proof of pretext.

Appellant's reliance on Schmidt's testimony fares no better and is another in a chain of record misstatements. Appellant asserts that Schmidt testified that "Yekel never came to him" about her harassment complaints, purportedly contrary to company policy. Appellant's Br. at 22. But within the same line of questioning Appellant cites, Schmidt established that *no policy* required Yekel to discuss Appellant's complaints with Schmidt because Schmidt was not a manager over

Appellant's area at the time. App. 162; R. Doc. 30 at 159. (Q: "If [Appellant] reported harassment to [Yekel], was it his duty to bring it to you?" A: "At the time, no . . . I wasn't in the area yet.")

In any event, even if Yekel had deviated from internal policy, such a deviation would not establish pretext without further evidence of discriminatory or retaliatory motive. As the Eighth Circuit has made clear, "[a]n employer can certainly choose how to run its business, including not to follow its own personnel policies … as long as it does not unlawfully discriminate in doing so." *McCullough* 559 F.3d at 863 (citation omitted). Appellant simply offers no evidence that Yekel deviated from Remington's policy, much less that any alleged deviation was motivated by discriminatory animus rather than supervisory judgment. The district court therefore correctly concluded that there was "insufficient evidence for a reasonable jury to infer pretext based on the investigation . . . of Plaintiff's complaints." Add. 11; App. 210, R. Doc. 40 at 9.

**C. The district court correctly applied Eighth Circuit precedent in concluding that Appellant did not raise a triable inference of pretext.**

Appellant contends that "[u]nder Eighth Circuit law . . . record mischaracterizations, paired with other indicia of improper motive, policy deviations, and disparate discipline, permit a jury to infer the stated reasons [for a termination] are unworthy of credence." Appellant's Br. at 19. In support, Appellant

cites *Lake v. Yellow Transp., Inc.*, 596 F.3d 871 (8th Cir. 2010); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000); and *Young v. Builders Steel Co.*, 754 F.3d 573 (8th Cir. 2014). Two of these cases do not support Appellant's proposition, and *Lake* is readily distinguishable.

In *Lake*, an employer asserted it terminated an employee in part because he had been unavailable for two shifts. 596 F.3d at 875–76. In response, the employee presented evidence that the employer violated its attendance policy in marking him unavailable for those shifts. *Id.* at 876. In the first instance, the employer claimed the employee had missed three calls in a day before accepting work, but the employer's policy provided that the employer would call employees only once per day to accept work. *Id.* In the second instance, the employer claimed the employee was unavailable for a shift, but the employee contended – citing the employer's records – that he had already worked 40 hours that week, and that under the employer's policy, employees who already worked 40 hours were not required to take calls. *Id.* The employee also presented evidence that the employer treated similarly situated employees disparately (by terminating the employee, who was black and had never missed work, while not terminating two white employees who had) and had offered shifting explanations for the employee's termination (first citing poor attendance, then tardiness.) *Id.* at 875–76. In reversing summary judgment, the Eighth Circuit held that the employer's deviation from its absenteeism policy, combined with its

mischaracterization of the Plaintiff's attendance record, supported an inference of improper motive. *Id.* at 876.

The facts in *Lake* differ so significantly from those here that the case offers no meaningful comparison. Unlike in *Lake*, Appellant presents no evidence that Remington mischaracterized her performance or any other employment record. In addition, as explained in Section III. A-B, *supra*, the record contains no evidence that Remington treated any employee more favorably than Appellant or departed from its policies. Finally, unlike the employee in *Lake*, Appellant does not allege Remington's explanation for its termination decision shifted. Accordingly, Appellant's reliance on *Lake* fails.

Further, *Reeves* does not support the proposition Appellant advances. *Reeves* holds only that a plaintiff's *prima facie* case, combined with sufficient evidence that the employer's stated reason for a termination is false, may permit – but does not compel – an inference of discriminatory intent. 530 U.S. at 137. In *Reeves*, an employee paired a *prima facie* case of ADEA discrimination with evidence that the articulated rationale for his termination was false and with additional evidence of age-based animus. *Id.* at 151. In particular, the employer asserted it terminated the employee for falsifying his direct reports' attendance records and for failing to discipline late and absent employees. *Id.* at 143-44. In response, the employee introduced evidence that he was merely manually clocking his employees in when



Appellate Case: 25-2886 Page: 34 Date Filed: 02/24/2026 Entry ID: 5611261

the timecard was broken, which the company conceded was standard practice for supervisors; that another supervisor, not him, was responsible for disciplining employees for violations of the company's attendance policy; and that the decisionmaker for his termination told the employee he was "so old he must have come over on the Mayflower" and "was too damn old to do his job." *Id.*

Here, as the district court correctly recognized, Appellant has not established a *prima facie* case of discrimination. Add. 9; App. 208, R. Doc. 40 at 7. As set forth in sections Section III. A-B, *supra*, Appellant has presented no evidence that the stated reasons for her termination were false, no evidence of discriminatory or retaliatory animus by the decisionmakers, and no comparator or policy-deviation theory that bridges the gap to discriminatory or retaliatory intent. Under *Reeves*, where a plaintiff's attack on the employer's explanation is weak and the record is replete with nondiscriminatory reasons for the termination, summary judgment is appropriate. *See* 530 U.S. at 148.

*Young* also does not advance Appellant's position – indeed, it supports Remington. In *Young*, the Eighth Circuit affirmed summary judgment for an employer on Title VII discrimination and retaliation claims. 754 F.3d at 575. Like Appellant here, the employee in *Young* made conclusory assertions about alleged policy deviations that were unsupported by the summary judgment record – specifically, that his employer did not follow its policy when it laid him off but

retained employees with less seniority. *Id.* at 578. The Court found the company's policy did not require layoffs based on seniority and concluded the employee failed to establish a *prima facie* showing of discrimination or retaliation. *Id.* at 579. As discussed in Section III. B, *supra*, there is no evidence Remington deviated from its policies with respect to Appellant. Accordingly, like the employee in *Young*, Appellant cannot establish pretext through alleged deviations from policy where the record reflects no such deviation.

In sum, none of the cases Appellant cites supports reversal of the district court's order. The district court correctly applied Eighth Circuit precedent in concluding that Appellant's evidence did not raise a triable inference of unlawful intent or pretext, and its grant of summary judgment should be affirmed.

## IV. The district court properly granted summary judgment on Appellant's retaliation claim based on the lack of evidence of a causal connection between any protected activity and Appellant's termination.

Appellant argues that the district court erred in granting summary judgment on her retaliation claim, asserting "a jury could find but-for causation based on escalating discipline and disputed write-ups." Appellant's Br. at 24. Remington does not dispute that Appellant engaged in protected activity in or around April of 2023 in connection with her report that a Rotary Cam Colleague allegedly discarded her homemade cardboard tool. At the time of her internal report, as here, Appellant could

not connect her allegation to any specific evidence of discrimination; rather she testified, "When I told them about my device, I said that *felt* like that was a racial move. . . I said, 'that makes me *feel* some type of way. I *feel* like they being racist.'" App. 174; R. Doc. 30 at 226 (emphasis added). These allegations are on their face purely speculative, and the record lacks any evidence linking Appellant's complaints to Remington's decision to terminate her employment several months later. Add. 13-14; App. 210-11, R. Doc. 40 at 11-12.

To establish a prima facie case of retaliation, a plaintiff must show: "(1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." *Green v. Franklin Nat. Bank of Minneapolis*, 459 F.3d 903, 914 (8th Cir. 2006) (citation omitted). Temporal proximity alone is insufficient to establish the requisite causal connection. *See id.* at 915.

Here, the undisputed timeline contradicts Appellant's retaliation theory. Appellant complained about her coworkers' conduct and described the disposal of her handmade tool as a "racial move" in or before April 2023. App. 172-74; R. Doc. 30 at 224-26; Aples App. 18, 20; R. Doc. 30 at 212, 219. She received a write-up for sleeping on the job on April 12, 2023. App. 151; R. Doc. 30 at 90. She did not receive another write-up until October 12, 2023 - six months later - when she was counseled for failing to repair a machine that became inoperable on her shift and for

failing to run the required number of machines on another shift. App. 178; R. Doc. 30 at 320; Aples App. 7, 9, 28; R. Doc. 14-6 at 4, R. Doc. 14-5 at 2, R. Doc. 30 at 319. That day, she was observed acting aggressively toward a supervisor. Aples App. 7-8; R. Doc. 14-6 at 4-5. The following day, she was written up for failing to segregate plastic cutoff rings, which ultimately led to her termination on October 20, 2023. Aples App. 2, 4, 8; R. Doc. 14-1 at 3, R. Doc. 14-3 at 2, R. Doc. 14-6 at 5.

Moreover, Appellant can point to no evidence suggesting that her write-ups for sleeping on the job, failing to run the proper number of machines, or ring mixing were in any way connected to her complaints in early spring 2023. The record establishes that each disciplinary action was based on documented conduct – sleeping during a shift (corroborated by a photograph and Appellant's own admission on the counseling memorandum), failing to operate the required number of machines (which Appellant acknowledged), and failing to segregate cutoff rings (for which Appellant took responsibility). *See* Section II. A, *supra*. Appellant's disagreement with these disciplinary decisions does not somehow transform them into evidence of retaliation. *See Hervey v. Cnty. of Koochiching*, 527 F.3d 711, 725 (8th Cir. 2008), cert. denied, 555 U.S. 1137 (2009) (In the retaliation context, disagreement with a plaintiff's employer's "assessment of her insubordinate behavior and poor performance . . . must do more than raise doubts about the wisdom and fairness of the supervisor's opinions and actions.")

Appellant cannot point to evidence to support a pretext argument and her termination, which occurred at least six months after she claimed that her co-workers' conduct was a "racial move," is not temporally proximate to her termination. The Eighth Circuit has held that "termination shortly after protected activity is not enough, standing alone, to raise a genuine issue of material fact as to the causal connection prong of a *prima facie* claim." *Green*, 459 F.3d at 915. A six-month gap between the protected activity and Appellant's termination, where Remington has articulated legitimate, documented reasons for the termination, is insufficient to raise a fact issue as to causation under these facts. *See Lenzen v. Workers Comp. Reinsurance Ass'n*, 705 F.3d 816, 821 (8th Cir. 2013) (holding intervening misconduct – poor performance and insubordination in the two months prior to employee's termination – precluded inference of a causal connection between purported protected activity and employee's termination three months later.) The district court's grant of summary judgment on Appellant's retaliation claim should therefore be affirmed.

**V. The district court properly granted summary judgment on Appellant's hostile work environment claim based on the lack of evidence of severe or pervasive conduct or discriminatory animus.**

To establish a claim of hostile work environment, a plaintiff must show (1) she belonged to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based upon race or sex; (4) the harassment affected a term,

condition, or privilege of her employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action. *Ross v. Douglas County*, 234 F.3d 391, 395–96 (8th Cir. 2000). The underlying wrongful conduct must be sufficient to create a hostile working environment, and whether an environment is hostile can be determined by considering circumstances such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Appellant argues that the district court erred in granting summary judgment on her hostile work environment claim, pointing to Yekel's testimony and what she characterizes as "racial context" in the workplace. Appellant's Br. at 25-26. Neither argument has merit.

First, Appellant takes Yekel's testimony out of context. Appellant emphasizes that, when discussing his investigation into Plaintiff's complaints about the Rotary Cam Colleagues' alleged conduct, Yekel's statement that " . . . if she is bothering them so much that they have got to harass her . . ." suggests Yekel favored the Rotary Cam Colleagues over Appellant. Appellant's Br. at 28. However, the record reflects that Yekel immediately corrected himself, testifying: "sorry, misworded. I am trying to say that I am trying to figure out if there's tension, because people don't just harass

because they know they will get in trouble." App. 156; R. Doc. 30 at 117. Yekel's clarification demonstrates that he did not mean that he agreed that the Rotary Cam Colleagues had harassed Appellant, or that it was okay if they had done so, but rather that he was attempting to assess the workplace dynamics and investigate Appellant's complaints.

Second, Appellant's assertions regarding "racial context" in the workplace fail to support her hostile work environment claim. Appellant points to Yekel's testimony regarding an employee's use of the N-word and employees wearing t-shirts containing unidentified racial slurs to support her contention that the Rotary Cam Colleagues' conduct was based on race. Appellant's Br. at 27. These allegations have nothing to do with Appellant. Appellant does not contend any racial slurs were directed at her or that she heard an employee use the N-word, nor does she provide any specifics as to these allegations. Appellant simply provides no context as to these incidents other than to acknowledge that the unidentified employees wearing the t-shirts were disciplined. Appellant's Br. 17. Appellant cannot tie these allegations to her work environment or her termination. Indeed, the record does not even reflect the names of these employees or provide any context that would permit Remington to address Appellant's allegations. What is clear, however, is that these incidents have nothing to do with this case or Appellant's legal claims.

As the district court correctly found, Appellant's hostile work environment claim further fails because the alleged conduct – including shutting down Appellant's machines and throwing away a tool she created, the only allegedly harassing conduct Appellant mentions in her brief – was not sufficiently severe or pervasive to alter the conditions of her employment. Add. 12-13; App. 209-10, R. Doc. 40 at 10-11; Appellant's Br. 4-5,26-27. For an actionable hostile work environment claim, the Eighth Circuit requires that "the workplace [be] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Harris*, 510 U.S. 17 at 21 (citation omitted). Isolated incidents, unless extremely serious, do not meet this standard. *See Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 893 (8th Cir. 2005).

Moreover, Appellant has failed to connect any of the alleged conduct by the Rotary Cam Colleagues to discriminatory animus based on her race or gender. For conduct to support a race-based hostile work environment claim, the conduct must "have a racial character or purpose." *Singletary*, 423 F.3d at 893 (quoting *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004) (holding acts of indiscriminate vandalism did not have sufficient racial character to establish a hostile work environment without proof that race motivated the conduct.) Appellant did not present evidence to connect the complained-of conduct to her race or her gender, and there is no such evidence in the record. The district court's grant of summary

judgment on Appellant's hostile work environment claim therefore should be affirmed.

## CONCLUSION

The district court properly granted Remington's Motion for Summary Judgment on all of Appellant's claims, and the judgment of the district court should be affirmed.

DATED: February 20, 2026

Respectfully submitted,

By /s/ *Paulo B. McKeeby*

Paulo B. McKeeby
(Tex. Bar No. 00784571)
Hannah B. Pool
(AR Bar No. 2020237)

**REED SMITH LLP**
2850 N. Harwood Street
Suite 1500
Dallas, Texas 75201
Phone: 469-680-4200
Facsimile: 469-680-4299
pmckeeby@reedsmith.com
hpool@reedsmith.com

*Counsel for Appellees The Kinetic Group, Inc. (formerly d/b/a Vista Outdoor Inc.) and Ammunition Operations, LLC, d/b/a Remington Ammunition*

## CERTIFICATE OF COMPLIANCE

1. This Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7). It complies with Fed. R. App. P. 32(a)(7)(B) because it contains 7,689 words.

2. This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 using 14-point Times New Roman.

3. This Brief has been scanned for viruses and is virus-free.

DATED: February 20, 2026

Respectfully submitted,

By */s/ Paulo B. McKeeby*

Paulo B. McKeeby
(Tex. Bar No. 00784571)
Hannah B. Pool
(AR Bar No. 2020237)

**REED SMITH LLP**
2850 N. Harwood Street
Suite 1500
Dallas, Texas 75201
Phone: 469-680-4200
Facsimile: 469-680-4299
pmckeeby@reedsmith.com
hpool@reedsmith.com

*Counsel for Appellees The Kinetic Group, Inc. (formerly d/b/a Vista Outdoor Inc.) and Ammunition Operations LLC, d/b/a Remington Ammunition*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this twentieth day of February, 2026, he caused the foregoing brief to be filed using the Court's electronic case filing system, which will automatically serve a notice of docket activity upon all counsel of record.

/s/ *Paulo B. McKeeby*
Paulo B. McKeeby



Appellate Case: 25-2886 Page: 45 Date Filed: 02/24/2026 Entry ID: 5611261