No. 25-2886

Civil

---

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE EIGHTH CIRCUIT**

---

**CANARY REED,**

**APPELLANT,**

**v.,**

**THE KINETIC GROUP, ET AL**

**APPELLEES.**

---

***Appeal from the***

***United States District Court for the***

***Eastern District of Arkansas, Central Division***

---

REPLY BRIEF OF APPELLANT

---

JODY L. SHACKELFORD
(AR Bar No. 2024042)
Attorney for Appellant

Iron Rock Law Firm
131 W. Church St.,
Salem, AR 72576
(870) 399-1440
jody@goironrock.com

## SUMMARY OF THE CASE AND ORAL ARGUMENT

Appellees' response does not show that summary judgment was proper. It instead asks this Court to adopt Remington's view of sharply disputed facts: that Reed was actually sleeping, that the production write-ups were accurate, that the October 12 confrontation was fairly described in the HR file, that Reichel was not a meaningful comparator, and that Reed's race-based complaints were handled evenhandedly. But at summary judgment, those disputes cannot be resolved in Remington's favor.

The record permits a reasonable jury to find that Remington's stated reasons were not honestly or consistently applied. Reed offered evidence that Reichel contradicted the core production and sleeping accusations; that Yekel admitted Reed was effectively "found guilty" before he spoke with her; that Yekel also admitted he credited the "majority" and not Reed when she complained of harassment; that the HR narrative of the Zeman incident materially conflicts with Yekel's sworn testimony; and that a similarly situated white male coworker was treated more favorably with respect to comparable misconduct and shared responsibility. Under Rule 56, those conflicts preclude summary judgment.



Appellate Case: 25-2886 Page: 2 Date Filed: 03/25/2026 Entry ID: 5621731

**TABLE OF CONTENTS**

I. Summary of the Case and Oral Argument………………………… i

II. Table of Contents…………………………………………...… ii

III. Table of Authorities……………………………………………… iv

IV. Jurisdictional Statement…………………………………………….. 1

II. Argument ……………………………………………………….. 2

A. A jury could find Remington's stated reasons were pretextual because Reed's race complaint was met with disbelief, one-sided factfinding, and a failure to follow the required HR process. ……………………………………… 2

1. Reed told Remington that she believed it racial treatment …… 3

2. Yekel admitted he believed the "majority" and not Reed. …….. 4

3. Schmidt testified the required reporting and HR-led investigation process was not followed. ……………………………………………….… 5

4. A jury could find the later disciplinary record was built through the same one-sided process. …………………………….……………..…….. 6

B. Comparator evidence independently supports pretext. ………… 8

C. The retaliation claim survives because Reed's communicated race complaint was followed by immediate and escalating adverse action. ………..…10

D. HWE claim survives when the record is considered in whole ….12



Appellate Case: 25-2886 Page: 3 Date Filed: 03/25/2026 Entry ID: 5621731

III. Conclusion ……………………………………..…………………13

Certificate of Compliance …………………………..……………………..15

Certificate of Service ……………………………….……………………..15



Appellate Case: 25-2886 Page: 4 Date Filed: 03/25/2026 Entry ID: 5621731

## TABLE OF AUTHORITIES

*Burton v. Arkansas Secretary of State*, 737 F.3d 1219 (8th Cir. 2013) ………… 6

*EEOC v. BNSF Ry. Co.*, No. 24-2082 (8th Cir. Aug. 28, 2025) ……………….. 11

*Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903 (8th Cir. 2006) .. 9,10

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993) …………………………..…11

*Heaton v. The Weitz Co.*, 534 F.3d 882 (8th Cir. 2008) ………………………... 9

*Lake v Yellow Transp., Inc.,* 596 F.3d 871, 874-76 (8th Cir. 2010)............... 5, 6, 8

*Lenzen v Worker's Comp. Reinsurance Ass'n,* 705 F.3d 816 (8th Cir. 2013)....... 10

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) ………… 2, 3, 4

*Ridout v. JBS USA, LLC*, 716 F.3d 1079 (8th Cir. 2013) ……………… 3, 4, 6, 8

*Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (en banc) …… . 2, 6

*Watson v. CEVA Logistics U.S., Inc.*, 619 F.3d 936 (8th Cir. 2010) ……...11, 12, 13

*Young v. Builders Steel Co.*, 754 F.3d 573 (8th Cir. 2014) …………………… …..8



Appellate Case: 25-2886 Page: 5 Date Filed: 03/25/2026 Entry ID: 5621731

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Reed asserted claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The district court also had supplemental jurisdiction over Reed's Arkansas Civil Rights Act claims pursuant to 28 U.S.C. § 1367.

The district court entered a final order granting summary judgment in favor of Appellees and dismissing Reed's claims. That order disposed of all claims as to all parties and is therefore a final decision under 28 U.S.C. § 1291. Reed timely filed her notice of appeal. Accordingly, this Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STANDARD OF REVIEW

This Court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. Summary judgment is proper only where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In employment discrimination cases, as in all others, the Court may not weigh evidence, make credibility determinations, or



Appellate Case: 25-2886 Page: 6 Date Filed: 03/25/2026 Entry ID: 5621731

resolve disputed factual inferences in favor of the moving party. Where the record would permit a reasonable jury to return a verdict for the nonmovant, summary judgment must be denied.

To the extent this appeal involves application of the McDonnell Douglas burden shifting framework, the ultimate question at the summary judgment stage remains whether the record contains sufficient evidence from which a reasonable jury could find intentional discrimination, retaliation, or other actionable misconduct. Evidence undermining the employer’s stated reasons, showing inconsistent treatment, or permitting an inference of pretext is to be considered as part of the record as a whole.

## ARGUMENT

### I. Appellees' "honest belief" theory fails because Reed's evidence challenges the honesty of the process itself.

Appellees say Reed merely disagrees with Remington's business judgment and that *Torgerson* therefore bars trial. That fails because Reed challenges the honesty of the process itself, not just the wisdom of the result.

*Reeves* permits a factfinder to reject an employer's explanation when the

record shows it may be unworthy of credence, and *Torgerson*, while rejecting any special summary-judgment rule in discrimination cases, still forbids courts to weigh credibility or choose among competing sworn accounts. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48 (2000); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (en banc).

Reed's evidence fits that rule: Reichel contradicted the core production and sleeping accusations, Yekel admitted Reed was effectively "found guilty" before he heard from her, and Schmidt testified the required HR path for harassment complaints was not followed.

That is why *Torgerson* is not fatal here. Appellees' "honest belief" defense works only if this Court credits Remington's witnesses over contrary sworn testimony from Reed, Reichel, Yekel, and Schmidt. Rule 56 does not permit that.

**A. The disputed write-ups are material because the record permits a finding that the asserted reasons were not honestly held.**

Appellees say the October 8 production accusation and the sleeping write-up are immaterial because Remington honestly believed them. That fails because, under *Ridout* and *Reeves*, disputed factual support for asserted performance and conduct reasons is material pretext evidence.

*Ridout* holds that evidence an employee was meeting expectations can create a jury issue when the employer says it fired for poor or declining performance, and *Reeves* permits a jury to reject the employer's explanation where the record undermines the stated reason. See *Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1088-90 (8th Cir. 2013); *Reeves*, 530 U.S. at 147-48.

Here, Reichel testified the claim that the machines “weren't running all night” was false and that he and Reed had five machines running until approximately 12:30 a.m. (App. 130, R. Doc. 30 at 31), testified he did not believe Reed was sleeping (App. 140a, R. Doc. 30 at 60), and Yekel admitted Reed had effectively been "found guilty" before he heard from her. (App. 147, R. Doc. 30 at 82). A reasonable jury could therefore find not just a mistake, but a pre-decided process, especially in view of the totality of the circumstances.

Appellees answer that Beauman investigated the sleeping incident and that Reed wrote on the counseling form that she had made a mistake. But that does not resolve the dispute. Reichel literally told management that Ms. Reed wasn’t doing anything wrong. She was written up anyway.

Under *Reeves*, that is the kind of evidence from which a factfinder may reject the employer's explanation and infer discrimination.



Appellate Case: 25-2886 Page: 9 Date Filed: 03/25/2026 Entry ID: 5621731

**B. The Zeman incident matters because Remington used it as a termination reason, and admitted it was a caught-red-handed lie.**

Appellees say the Zeman incident is immaterial because the only question is how Remington perceived it. That fails because Remington used that confrontation as a termination reason, and *Lake* confirms that a materially mischaracterized record can create a jury question on pretext when the employer relies on it. See *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874-76 (8th Cir. 2010).

The HR account states Reed interrupted and yelled at Zeman, while Yekel testified Reed was talking with him and Zeman "jump[ed] into the conversation," and Yekel acknowledged that Zeman apologized to some extent for inserting himself into the exchange. (App. 106, R. Doc. 30 at 7; App. 144, R. Doc. 30 at 76; App. 145, R. Doc 30 at 77). A jury could find that the black and white paper trail itself was falsified, slanted at the least, to make Reed appear to be the aggressor. This fact is not even in dispute based on the clear testimony.

Appellees say Yekel later testified Zeman was part of the conversation and spoke during a pause. That simply identifies another factual tension. It does not eliminate the conflict between the HR write-up and Yekel's testimony that Reed was already speaking with him when Zeman inserted himself. Nor can appellees

use the supposed "honest belief" rule to bypass that conflict. *Lake* confirms that when an employer mischaracterizes the employee's record or applies its stated standards unevenly, pretext is for the jury. See *Lake*, 596 F.3d at 874-76.

In short, appellees' theory works only if this Court accepts Remington's version of contested events and discounts contrary testimony. Rule 56 does not permit that. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (en banc).

## II. Appellees overstate the comparator and policy-deviation issues.

### A. Reichel is sufficient comparator evidence under Eighth Circuit law.

Appellees say Reichel is not a valid comparator because no white coworker matches Reed's full mix of alleged misconduct and termination rationale. That fails because *Ridout* and *Burton* reject any requirement of a perfect twin at the pretext stage. The question is whether the comparator is substantially similar and engaged in conduct of comparable seriousness, not precisely identical conduct. See *Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1088-90 (8th Cir. 2013); *Burton v. Arkansas Secretary of State*, 737 F.3d 1219, 1230-31 (8th Cir. 2013).

Reichel satisfies that standard on this record: same job, same shift, same department, same production expectations, repeated sleeping without formal

written discipline, and evidence of shared ring-mixing responsibility without shared discipline.

Appellees respond that Remington was unaware of Reichel sleeping. But that is not a basis for summary judgment on this record. Reed's point is not limited to whether some supervisor once admitted knowledge of every instance of Reichel's sleeping. It is that the only white male technician working the same shift admitted repeated sleeping without formal written discipline, while Reed was formally written up for a single disputed incident that Reichel said he contemporaneously disputed. At minimum, the competing record characterizations create a jury question rather than an "undisputed" defense.

The October 12 ring-mixing incident independently supports a jury issue. Appellees say Reed alone was responsible that day. But Yekel testified that while Reed and Reichel worked together, responsibility was 50/50, and that if Reichel did not accept blame, responsibility became 100% Reed (App. 154-55, R. Doc. 30 at 109, 30 at 113).

Yekel also testified Reichel received no discipline for the ring-mixing incident (App. 154, R. Doc 30 at 109). Appellees cite other record material to argue Reichel once received a write-up for mixing rings. Even if that were so, it would not erase the factual conflict over the October 12 50/50 incident. It would

confirm that the evidence is disputed and therefore belongs to the jury.

That is precisely what *Ridout* forbids courts to do at summary judgment: demand an exact match and then resolve factual discrepancies in the employer's favor.

**B. The policy-deviation evidence remains triable.**

Appellees say there was no policy deviation because Yekel spoke with HR. That fails because the relevant question is not whether HR was mentioned, but whether Remington followed its required escalation and HR-led investigation process. *Young* affirmed only because the plaintiff there "failed to show [the employer] did, in fact, deviate from stated policy," while *Lake* recognizes that policy deviation and a slanted record can support an inference of pretext. *Young v. Builders Steel Co.*, 754 F.3d 573, 578 (8th Cir. 2014); *Lake*, 596 F.3d at 874-76.

That box is checked here, Reed has the evidence *Young* lacked. Schmidt testified that supervisors were required to stop harassment, separate employees, obtain statements, and escalate because HR handles the investigation, and he testified Reed's complaint was not reported in accordance with policy. (App. 157-58 R. Doc. 30 at 137, 30 at 138; App. 162-63, R. Doc. 30 at 159, 30 at 160). Combined with Yekel's admission that he believed the "majority" and not



Appellate Case: 25-2886 Page: 13 Date Filed: 03/25/2026 Entry ID: 5621731

Reed, that is a classic jury question.

Yekel's own testimony supports that failure. He admitted that when Reed complained of harassment, he "took everybody's word" and credited the "majority" (App. 150, R. Doc 30 at 89). He admitted he did not believe Reed's complaint. Id. A reasonable jury could find that what occurred was not an HR-led investigation under company policy, but a one-sided credibility call in favor of the white employees Reed had accused.

In sum, appellees do not defeat Reed's pretext showing by relabeling disputed evidence as "no deviation" and "no comparator." They simply identify factual disputes that a jury must resolve.

## III. Appellees concede protected activity, and the record supports causation and pretext on retaliation.

Appellees say retaliation fails because six months passed and Reed engaged in intervening misconduct. That fails because protected activity is conceded, the intervening discipline is itself disputed, and *Heaton* permits a plaintiff to bridge a temporal gap by showing immediate and escalating adverse action after the complaint. See *Heaton v. The Weitz Co.*, 534 F.3d 882, 887-89 (8th Cir. 2008).

*Green* and *Lenzen* do not control because those cases involved speculative



Appellate Case: 25-2886 Page: 14 Date Filed: 03/25/2026 Entry ID: 5621731

pretext or undisputed intervening performance problems. Reed complained in or before April 2023, received the sleeping write-up on April 12, 2023, and then was terminated after a cluster of disputed October write-ups. A jury could find the disciplinary sequence itself was retaliatory.

Appellees rely on *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903 (8th Cir. 2006), and *Lenzen v. Workers' Comp. Reinsurance Ass'n*, 705 F.3d 816 (8th Cir. 2013), but those cases involved materially different records. In *Green*, the court found the employee's evidence of pretext was speculative and the employer's staffing-related reason undisputed. 459 F.3d at 920-22. In *Lenzen*, the plaintiff could not overcome undisputed performance and insubordination problems. 705 F.3d at 821.

Here, by contrast, Reed's alleged intervening misconduct is itself disputed. Reichel contradicted the core write-ups; Yekel admitted Reed was pre-judged on the sleeping charge; the HR account of the confrontation is materially disputed; and the comparator evidence supports an inference of selective discipline. Where the intervening discipline may itself be pretextual, appellees cannot use it to defeat causation as a matter of law.

Appellees also argue Reed's complaint was "speculative" because she said the conduct felt racist. That argument is beside the point because appellees do not



Appellate Case: 25-2886 Page: 15 Date Filed: 03/25/2026 Entry ID: 5621731

dispute, for present purposes, that Reed engaged in protected activity.

Reed explicitly told supervisors she felt the destruction of her guide and throwing it in the trash was a racial move. The jury could then decide whether the disputed discipline that followed would have occurred absent that complaint.

## IV. The hostile-work-environment claim also survives summary judgment under the totality of the circumstances.

Appellees say Reed's hostile-work-environment claim fails because the incidents were individually minor, facially neutral, or not directed at her. Not so. That fails because *Harris*, *Watson*, and *BNSF* require the Court to evaluate the total environment, not atomized fragments. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *Watson v. CEVA Logistics U.S., Inc.*, 619 F.3d 936, 942-45 (8th Cir. 2010); *EEOC v. BNSF Ry. Co.*, No. 24-2082, slip op. at 21-23 (8th Cir. Aug. 28, 2025).

*Watson* also permits facially neutral conduct to be considered in context and leaves employer liability to the jury where the remedial record is mixed. Reed's evidence, taken as a whole, includes repeated machine shutoffs, the destruction of her guide, blame-shifting, racial slurs in that workplace, her status as the only Black employee in the unit, and management's failure to escalate her complaint under policy. That is not the analysis *Harris*, *Watson*, or *BNSF* permits. Here, a

reasonable jury could therefore find severe-or-pervasive race-based harassment and an inadequate response.

Viewed as a whole, Reed's evidence was not limited to one or two petty slights. Reed testified day-shift workers shut down her machines about 20 times before her shift, forcing her to restart production and impairing her work (App. 169, R. Doc 30 at 217). Reichel corroborated that the machines were supposed to remain running through shift change and that Reed complained they were being shut off when she came in (App. 120, 124, R. Doc. 30 at 21, 30 at 25-26).

Reed also testified her handmade guide was thrown away, that white coworkers gave poor communication, and that she was repeatedly blamed for problems, as the only Black employee in the unit (App. 164, R. Doc. 30 at 104).

That background matters because facially neutral conduct may be considered in context where the record permits an inference of racial animus. *Watson*, 619 F.3d at 943-44. Reed also offered evidence of racial context at the facility, including Reichel's testimony that he heard the N-word at Remington and saw employees wearing shirts with racial slurs (App. 139, R. Doc. 30 at 47). Appellees say those incidents had "nothing to do with" Reed. But that is too sweeping at summary judgment. A jury may consider the workplace context together with the treatment of the only Black employee in the unit and management's response to her

complaints.

The remedial-action element is likewise disputed. Appellees portray Yekel as a supervisor who investigated and took reasonable action. Reed's evidence would support the opposite conclusion. Yekel admitted he credited the "majority" and not Reed (App. 150, R. Doc 30 at 89). Schmidt testified Reed's race-based complaint was not escalated in accordance with policy (App. 162, R. Doc 30 at 159). Under *Watson*, a mixed or indifferent record of response is sufficient to create a jury issue on employer liability. 619 F.3d at 944-45.

Appellees are correct that this case does not contain evidence of direct racial slurs aimed at Reed by the day-shift employees themselves. But Title VII does not require a plaintiff to hear a racial epithet in her own presence in order to survive summary judgment. The question is whether, under the totality of the circumstances, a reasonable jury could infer race-based, severe-or-pervasive harassment and inadequate employer response. On this record, the answer is yes.

## CONCLUSION

Appellees' brief does not eliminate the factual disputes that drove Reed's opening brief. It instead asks this Court to accept Remington's version of contested

events, credit Remington's paper trail over contrary testimony, and treat disputed comparator and policy evidence as nonexistent. That is not the Rule 56 standard.

At minimum, a jury must decide whether Reed was pre-judged on the sleeping charge, whether the October 12 confrontation was fairly memorialized in Remington's HR file, whether Reichel's repeated sleeping and shared-responsibility misconduct were treated more leniently, whether Reed's race-based complaints were escalated and investigated as policy required, and whether the discipline imposed after Reed complained reflected retaliation rather than ordinary enforcement. Those are quintessential issues of fact.

Because Reed presented evidence from which a reasonable jury could find discrimination, retaliation, and a hostile work environment, the judgment should be reversed and the case remanded for trial.

Respectfully submitted,

Canary Reed, Appellant/Plaintiff

BY: /s/ Jody Shackelford
Jody L. Shackelford, Esq.
AR Bar #: 2019037
131 W. Church Street
P.O. Box 125,
Salem, Arkansas 72576
Phone: (870) 399-1440
Fax: 870-466-7574
Email: jody@goironrock.com

## CERTIFICATE OF SERVICE

I, Jody L. Shackelford, do hereby state that I have on this 23rd day of March 2026, served a true and correct copy of the above and foregoing by email to:

McKeeby, Paulo B. PMcKeeby@reedsmith.com

Pool, Hannah HPool@reedsmith.com

BY: /s/ Jody Shackelford
Jody L. Shackelford, Esq.
AR Bar #: 2019037

## CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32. This brief contains approximately 2,783 words, excluding the parts exempted by Fed. R. App. P. 32(f).

This brief was prepared using a proportionally spaced font in Word in 14-point Times New Roman.

The brief and addendum have been scanned for viruses and that the brief is virus-free.

Dated: March 17, 2026

BY: /s/ Jody Shackelford
Jody L. Shackelford, Esq.
AR Bar #: 2019037